## Richmond.

76 307|
a91 192|
76 307|
98 542|

### MONTAGUE'S ADM'R v. MASSEY, AUDITOR, &C.

March 23, 1882.

**Absent, *Moncure,* P., sick, and *Burks,* J., interested in result.**

1. JUDGES—*Terms.*—Under the constitution of this State judges can be elected only for full terms. The rule of *stare decisis* applies here.
2. IDEM—*Salaries.*—Nor can the salary and allowances of a judge be diminished during his term.
3. ESTOPPEL.—Between a citizen and the State owing him money for services rendered, no question of estoppel can arise.
4. WAIVER.—Accepting commission under second election and diminished salary and allowances under the acts of the legislature, without protest or objection, does not constitute a waiver of his lawful rights—acceptance of part of a claim is not a satisfaction of the whole.
5. CASE AT BAR.—M was on 25th March, 1875, elected judge of eighth judicial circuit, to fill vacancy in term which would have expired 31st December, 1878. The term of a circuit judge is eight years. In December, 1872, the legislature passed an act that all judges elected to fill vacancies should be for the unexpired terms of their predecessors. When M was elected, a circuit judge's salary was $2,000; but in March, 1878, an act of assembly was passed reducing it to $1,600 after 1st January, 1879. At re-election of circuit judges, in December, 1878, M was re-elected judge of that circuit; was commissioned, received the reduced salary without objection after 1st January, 1879, till his death, which occurred 4th March, 1880. On petition by his administrator against the auditor, to recover the difference between the original and the reduced salaries from 1st January, 1879, until 4th March, 1880—

HELD :

The administrator of M is entitled to recover.

The facts are fully set forth in the opinion.

*H. R. Pollard, J. A. Jones,* for the appellant.

*J. G. Field,* attorney-general, for the appellee.

CHRISTIAN, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of the city of Richmond. The facts upon which our decision must turn may be briefly stated as follows:

The Hon. Robert L. Montague, the late distinguished judge of the eighth judicial circuit, was first elected and duly commissioned as judge of said circuit on the·25th day of March, 1875. He qualified on the 1st day of April, 1875, and took the oaths of office required by law before the Hon. Richard C. L. Moncure, then and now the president of this court.

He entered at once upon the duties of his office as judge of the eighth judicial circuit, and continued to discharge the same until about the 4th of March, 1880, when he departed this life.

In December, 1872, the general assembly passed an act which provided that the terms of office of all judges elected to fill vacancies shall be for the unexpired terms of their predecessors.

Judge Montague's election, made on the 25th of March, 1875, was made, of course, after the passage of that act, and it is to be presumed was made by the legislature under the provisions of that act, to fill the unexpired term of Judge Garrison, who had resigned his office as judge of the eighth judicial circuit to accept another position, and whose unexpired term would have ended December 31st, 1878.

All this is evident from the fact that in December, 1878, the general assembly re-elected Judge Montague as judge of the eighth judicial circuit, and that he was again commissioned to that office.

In both commissions—that which he received by virtue of his election in 1875, and that which he received by virtue of his election in 1878—the one issued by Governor Kemper and the other by Governor Holliday—he was commissioned as judge of the eighth judicial circuit "to exercise the functions and discharge the duties of his office *according to law.*"

In the first commission issued by Governor Kemper, he was commissioned as "judge of the eighth judicial circuit *for the term of office prescribed by law.*"      ' .

In that issued by Governor Holliday, he was commissioned for "the term of eight years, beginning on the 1st of January, 1879," to exercise "the functions and discharge the duties of his office *according to law.*"

It further appears that by the act of the general assembly, approved March 12th, 1878, the salaries of the circuit judges were reduced to the sum of $1,600 *per annum,* and the mileage to ten cents for each mile of necessary travel, from and after January 1st, 1879.

At the time of Judge Montague's first election—to wit, on the 25th of March, 1875—the salary of a circuit judge was the sum of $2,000 per annum, and the mileage four dollars for every twenty miles of travel.

During his life, after his second commission under his last election, Judge Montague received regularly his monthly pay and mileage in accordance with the act above referred to, reducing the salary and mileage of circuit judges; and he made no claim, as far as the record shows, of any further or different compensation than that provided for by the act approved March 12th, 1878, fixing the salaries of circuit judges at $1,600 per annum, and the mileage at ten cents per mile for each mile of necessary travel.

After the death of Judge Montague his administrator filed his petition in the circuit court of the city of Richmond, presenting the claim of his decedent against the

State for the sum of $899.48, it being the difference between the sum which the decedent was entitled to receive under the laws and constitution of this State, as fixed at the time of his first election, and the amount actually received by him during his term of service after his second election.

The object of the petition in the circuit court of Richmond was to recover the difference between his salary and mileage, as fixed by law at the time of his first election, and that which he drew under the act of March 12th, 1878, from the 1st of January, 1879, until the time of his death, which difference amounts to the sum of $899.48.

The petition filed in the circuit court was for the purpose of asking a judgment in favor of the administrator against the Commonwealth for the aforesaid sum of $899.48.

This petition was answered by the Hon. John E. Massey, late auditor of public accounts, and was filed by the Hon. James G. Field, late attorney-general.

The answer admits the facts set forth in the petition, which have already been detailed, and relies for defence against this claim upon two points—to wit: first, that Montague, as judge aforesaid, never during his lifetime claimed or asserted any right whatever to the additional pay now demanded by his personal representative.

It insists that the action of the general assembly in re-electing the said Montague in December, 1878, was a regular and valid act made in accordance with the act of assembly, and that if said re-election was irregular at the time that it was made, that irregularity was cured by the subsequent acceptance of and qualification under the commission issued to said Montague in pursuance of said election, and the discharge of the duties of his office under the said election and commission.

It is insisted that upon the acceptance of the last com-

mission, and his discharge of official functions under it, and his receipt of the diminished salary and mileage, he must be held to have *waived*, resigned and surrendered any rights or functions he had under the preceding commission.

With this answer was filed receipts of Montague for salary and mileage from the 1st of January, 1879, the date of his last commission, until the day of his death, all of which had been paid by the auditor of public accounts.

The case was submitted, upon this petition and answer and exhibits filed, to the judge of the circuit court, upon the whole matter of law and fact, and that court dismissed the petition and gave a judgment for costs against the petitioner.

It is from this judgment that a writ of error was allowed by one of the judges of this court.

I am of opinion that this judgment is plainly erroneous.

According to the repeated decisions of this court, reported in 33d Grattan, the election of a judge is always an election for the full term. When, therefore, Judge Montague was elected in 1875 as judge of the eighth judicial circuit, he was elected for the full term of eight years.

In the case of ex-parte Meredith, 33d Grattan, p. 119, this court held that a judge of the county court, who has been elected to fill a vacancy occasioned by the death of a former judge, is elected for a full term of six years and not for the unexpired term of the former judge.

And this is equally true of the judges of the court of appeals and of the circuit judges.

In that case, now so familiar to the profession and to the public, Judge Staples, in the most elaborate and exhaustive opinion, in which he referred to the constitutions of other States, and to numerous authorities, conclusively and logically demonstrated that under our constitution a judge could only be elected to fill the full term prescribed by that instrument. It would be a work of supererogation in

this case to repeat his arguments and the authorities referred to by him.

His conclusions, both upon reason and authority, are so cogent and convincing to show that under our constitution a judge can only be elected to a full term, that I do not think it necessary to do more than to refer to that opinion and others which follow it in 33d Grattan (see Bland and Giles county judges, and Williams and McCraw, and Estes against Edmondson), all following and adopting the principles laid down in the leading case of ex-parte Meredith, *supra.*

According to these decisions, which have been so often reaffirmed by this court as to apply the principle of *stare decisis,* Judge Montague was elected for the full term of eight years when he was first elected to fill the vacancy caused by the resignation of Judge Garrison.

The commission, which he then received, was "as judge of the eigth judicial circuit for the term of office prescribed by law."

According to our decisions, above referred to, that term of office was for the full period of eight years. During that period, according to the very terms of the constitution, the salary and allowances of a judge could not be diminished during his term of office.

That provision of the constitution is in these words: "Sec. 22. All the judges shall be commissioned by the governor, and shall receive such salaries and allowances as may be determined by law, the amount of which shall not be diminished during their term of office."

It being established, therefore, by the authorities above referred to, that Judge Montague was elected for the full term of eight years, I think it is plain that under the provision of the constitution just quoted, the legislature had no authority to "diminish" the "salary" or "allowances" to which he was entitled during the term of his office.

It is insisted, however, that Judge Montague waived his right to claim the salary and mileage which a circuit judge was entitled to receive, at the time of his first election, by the fact that he received without protest the reduced salary and mileage fixed by the legislature, and that he failed to enter any protest at the time against the payment of the reduced salary and mileage.

This view is fully answered by the decision of this court in the Bland and Giles county judge case, 33d Grattan, 443, in which, when the same point was made against Judge Easley for his failure to protest against the incompetency of Wylie, and by becoming an attorney and practitioner in his court, this court unanimously said "he neither forfeited nor abandoned his office by failing to protest at once against the incompetency of Wylie, or by becoming an attorney and practitioner in his court. He simply yielded for the time to the legislative construction of the constitution. But as soon as the court of appeals had given its construction to the provision of the constitution, he promptly asserted his rights and maintained them in accordance with that construction."

So it may be said in this case, with much more force, that Judge Montague, by simply receiving without protest the salary and mileage offered to him by the auditor, did not yield any of his constitutional rights, but simply yielded for the time to the legislative construction of the constitution, and accepted. whatever, under the act of assembly, the auditor chose to pay him. Of course he did not know and could not know what would be the decision of this court upon the question of tenure of office of a judge. He died before the question was mooted or decided.

Since his death this court has decided in repeated cases, that a judge's election is for the full term, under the constitution, and not for the unexpired term of his predecessor.

Now, the claim of Judge Montague's administrator can only be defeated upon one of two grounds—either of *estoppel* or *waiver*. The doctrine of *estoppel* cannot be applied to this case. Estoppel must be reciprocal and mutual, and is founded upon the idea that the acts of the party estopped must result in injury to the other party, and generally that it would be *a fraud* if the right asserted be maintained. Abbott's Law Dictionary, 444, title estoppel. No such question can arise between the State and a citizen claiming money due from the State for services rendered.

Nor can the defence of *waiver* by Judge Montague of his constitutional rights be maintained. The only act alleged or proved was the fact that he accepted without protest the amounts paid to him by the auditor of public accounts, his monthly salary and mileage, in accordance with the act of the general assembly, which fixed such salary and mileage.

No man, even in cases between man and man, can be bound by a waiver of his rights unless such waiver is distinctly made, with full knowledge of his rights which he intends to waive; and knowledge of his rights, and distinct intention to waive them, when fully known, must be plainly made to appear. Certainly, the receipt or acceptance of a part of a debt is not a satisfaction of the whole; and such receipt or acceptance of a part cannot be held as a *waiver* of the right to receive the balance. See the leading case of *Cumber* v. *Wane,* 1 Smith's Leading Cases, p. 595, and cases there cited, containing a most exhaustive discussion of the whole subject, which makes it unnecessary to refer to any other authorities.

These principles, settled with reference to transactions between man and man, apply, I think, *a multo fortiori* to transactions between a State and one of its citizens. How can it be said that Judge Montague *waived,* or that he or his personal representative *is estopped,* simply because he received at the hands of an officer of the State the amount

which the statute law authorized to pay over to him as his salary and mileage? His acceptance of this amount in silence, and without protest, certainly did not constitute a surrender of his constitutional rights. He might not choose, for many reasons, to make any question with the auditor. He might choose to wait until the question was judicially determined as to what amount of salary and mileage he was entitled to receive. His acceptance of what was paid was certainly no surrender of his right to receive what, according to the laws and constitution of the State, as declared by its highest judicial tribunal, he was lawfully entitled to receive. The statute law under which the auditor paid his salary and mileage was the law until declared unconstitutional by this court as to judges elected for a full term. He might well submit for the time to that law, and accept what the proper officer of the government might pay over to him. But when that law has been construed by this court, and it has been declared that his first election was for the full term of eight years, and when the constitution declares in clear and emphatic terms that "the salary and allowances" of judges shall not "*be diminished*" during their terms of office, the *mere acceptance* by Judge Montague of his monthly salary and mileage under the statute law, as it then stood, not construed by this court, does not constitute a *waiver* or operate as an *estoppel*.

Now, as before remarked, he did not know, and could not know, what would be the decision of this court with respect to the tenure of office of a judge elected to fill an unexpired term. He died before the question was mooted or decided.

I do not say or intend to intimate that the claim of his administrator is founded upon Judge Montague's ignorance of the law, in not protesting against the receipt of $1,600 salary, when, in fact, he was entitled to $2,000 *per annum.* "*Ignorantia legis excusat neminem,*" is a maxim of general ap-

plication, subject to few exceptions, and especially to a judge presumed to be learned in the law.

I mean to say this: Whatever his opinion or his knowledge might have been, his *mere acceptance* of what the auditor paid him under the statute law, was no waiver of his right to receive what *in fact and in law* he was *actually* entitled to receive under the constitution and laws of this State.

I am aware that there are many cases that hold that where a party has paid taxes under laws afterwards declared unconstitutional, he cannot recover back the taxes so paid. The principle upon which these decisions rest can have no application to the case before us.

There is a manifest distinction between such cases and the case before us. Where a man pays taxes under a law afterwards declared to be unconstitutional, without protest at the time of payment, he cannot recover them back, because the tax collector has already paid them into the treasury, and it may be already appropriated to its legitimate use; and it would produce great confusion and inconvenience to pay back the taxes so received. The only remedy for the party thus aggrieved is to apply to the legislature for redress. In the leading case of *Elliott* v. *Swartwout*, 10 Peters, 137, the doctrines upon this subject are elaborately considered and clearly laid down, and I think it only necessary to refer to that case as correctly expounding the law.

But the principles declared in that case have no application to the case before us.

Here is not an effort *to recover back* money paid under an unconstitutional law, but the claim is for money which the State actually owes, according to its laws and constitution, to one of its citizens; and the only defence made is, that a payment of a part, and the acceptance of a part, is a full discharge of the whole debt and a waiver of the right to

claim what under the laws and constitution is still justly and legally due.

I am of opinion that such a defence cannot be maintained by the State in opposition to the claim presented in this case.

I think the claim of this administrator is a proper and a just one, and that its payment was never waived by any act of the deceased in his lifetime. His acceptance merely of whatever the auditor of public accounts chose to pay him, under the statute law, was certainly no waiver of his constitutional rights, especially when this court had not then been called upon to define and declare them.

Now that it has been judicially determined by the repeated decisions of this court, that a judge can only be elected for a full term, and it being declared by the constitution that their "salaries and allowances" shall not be "*diminished*" during their terms of office, I think it is very plain that the claim of Judge Montague's administrator is a just and lawful one, and ought to have been allowed by the circuit court of the city of Richmond and paid out of the public treasury as a proper charge against the State.

I am, therefore, of the opinion that the judgment of the said circuit court, dismissing the petition of Montague's administrator, should be reversed and a judgment entered for the amount of the claim preferred against the State by said administrator.

JUDGMENT REVERSED.