# Staunton.

SMITH & OTHERS v. MILLER & OTHERS.

SEPTEMBER 13, 1900.

1. TRUSTS AND TRUSTEES—*Deed to Secure Existing Debts—Bond of Later Date.*—Although a bond bears date subsequent to the execution of a deed made to secure the existing debts of the grantor, it will be deemed to be secured by the deed if shown to have been given solely for debts existing at the time the deed was executed.

2. BONDS—*Consideration—Decedent's Estate—Parent and Child—Voluntary Conveyance Subject to Grantor's Debts.*—A bond given by a father to his son, in lieu of the purchase-price of a tract of land which he had previously given to the son, but not conveyed to him, and which he subsequently sold and conveyed to a third person, constitutes a valid debt against the father's estate, and cannot be questioned by his children to whom he voluntarily conveyed his land subject to the payment of his debts. The conveyances to his children were not sales to them of his lands, but gifts upon certain terms and conditions.

3. TRUSTS AND TRUSTEES—*Trustee—Purchaser—Rents and Profits—Purchase-Money and Improvements.*—A trustee cannot be a purchaser at his own sale, although the price be fair, or the best to be had, and the motive pure. The fact that he disclaimed the purchase and authorized his co-trustee to sell the land to any one else who would take it at the same price, is immaterial. The sale should be set aside, and, in the absence of actual fraud, the trustee-purchaser should be charged with all rents, issues and profits derived by him since his purchase, and credited by his purchase-money, with interest thereon, and with the value of all permanent and substantial improvements made by him since his purchase.

4. VOIDABLE CONTRACTS—*Ratification—Waiver—Knowledge of Facts.*—The burden of proving ratification of, or acquiesence in, a voidable

contract is on him who alleges it. Ratification and acquiescence imply knowledge, and cannot be imputed in the absence of all knowledge of the facts on which they are predicated. The law does not hold one to have waived rights, unless, with full knowledge of the facts, he has distinctly done so.

Appeal from a decree of the Circuit Court of Culpeper county, pronounced February 12, 1898, in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*J. F. Stother* and *M. J. Fulton*, for the appellant.

*J. C. Gibson* and *H. G. Moffett*, for the appellee.

Opinion prepared by RIELY, J., and adopted as the opinion of the court.

Complaint is made of the allowance as a credit to John B. Miller, in his settled account as trustee, under the deed from his father, John Miller, of the bond of $904.28. The deed bears date on October 5, 1872, and one of its objects was to secure the *existing* debts of the grantor. The bond bears date on January 13, 1873, and expresses on its face that it is for the balance found due on a settlement of open accounts between the parties, running from January 1, 1862, to January 13, 1873. The ground of objection to the payment of the bond is that it bears date after the deed, and by its terms impliedly includes accounts between the parties, made subsequent to, as well as before, the deed, and that it does not appear how much of the consideration of the bond was incurred after the date of the deed, and was not an *existing* debt at the time of the execution of the deed.

John Miller, by the said deed, divested himself of his entire

estate of every kind and description, and being of advanced age, ceased thereafter to be engaged in any business, having made provision for his maintenance and support by the exaction of an annuity from each of his children, in consideration of the lands divided among them by the deed. The presumption from the evidence is wholly against the creation of accounts between the parties after the execution of the deed; and it was proved by R. E. Miller that he was present at the execution of the bond, examined the account for which it was given in his father's presence, who thought it correct; that it also seemed to the witness to be correct; that the bond was given for the same amount as the balance due on the account, and that he thereupon witnessed the bond. R. E. Miller was trustee in the deed, along with his brother, John B. Miller, and a grantee, as one of the four children of John Miller, of the lands divided among them by the deed. It is altogether improbable that he would have sanctioned the bond by attesting it, and thereby made his share of the estate liable for one-fourth of the debt evidenced by the bond, if he had not been wholly satisfied of its correctness. It may be also added that John B. Miller, to whose deposition the appellants reserved the right to except, but have relied upon, or rejected it, both in the petition for appeal and in the brief filed by their counsel, accordingly as it suited their purposes, deposed that the account for which the bond was given contained no item after October 5, 1872, the date of the deed. The Circuit Court did not err in allowing the bond as a credit.

There is even less ground for complaint against the allowance of the bond for $1,123.95, as a credit. This bond bears date July 11, 1871, prior to the date of the deed. The bond, with the exception of the signature, was proved to be in the handwriting of E. T. Jones, a son-in-law of John Miller, and the signature thereto genuine. It was also proved that John Miller owed one G. H. Brown three notes, aggregating on July 11, 1871, the sum of $1,123.95; that John Miller asked his son,

John B. Miller, to pay Brown and prevent his bringing suit; and that John B. Miller executed his note to Brown for $1,000, payable at twenty days, and also transferred to him the note of S. J. Spindle & Co., for $123.95, in full discharge of the indebtedness of John Miller to Brown, who then transferred to John B. Miller the notes of his father without recourse. It was further proved that John Miller thereupon, on the same day, executed to John B. Miller the bond in question for $1,123.95, and that John B. Miller subsequently paid to Brown the note of $1,000.

As to the bond of $2,650, executed by John Miller to John B. Miller, on the 1st day of October, 1872, it appears from the evidence that John Miller, on January 1, 1867, gave John B. Miller the part of his "Mount Vernon," or "home," tract of land, known as the "Fork" land, upon which there was a valuable mill. He placed him in possession of the "Fork" land as his own, giving him full possession and absolute control of it, but did not convey it to him. John Miller afterwards, with the consent of John B. Miller, sold the mill and ten acres of land to Smoot and brothers, and collected and used the money in paying certain of his debts, and for other purposes, but with the understanding and agreement with John B. Miller that the property sold to the Smoots should be made good to the son by the father in the future division of his estate. John Miller, from time to time, also gave lands to his other children, but did not convey to them the title thereto until the making of the deed of settlement of October 5, 1872. The bond for $2,650, as its date shows, was executed a few days prior to the execution of the deed aforesaid (by which John Miller confirmed the gift of lands previously made to his children), in accordance with the previous understanding that he would reimburse John B. Miller for the mill property sold to the Smoots, and in consummation of his scheme for the division of his property among his children. The bond was written by E. T. Jones, the son-in-law of John

Miller (who also, during the same time, prepared the deed of October 5, 1872), to carry out the understanding between John B. Miller and his father, that the latter, in the future division of his estate, would reimburse to his son the proceeds of the sale of the mill property to the Smoots, and was witnessed by R. E. Miller, whose interest, as well as that of his sister, the wife of Jones, acquired in their father's estate under the said deed, was directly affected, and proportionately lessened by the execution of the bond. The division by John Miller of his estate among his children, after making provision for the payment of his debts, was not a sale to them of his property, but a gift thereof upon certain terms and conditions. It was his right to dispose of his property to his children by deed, as to him seemed best, as he would have had the right to do by will, and it was not for them to question the manner of the disposition or the nature of the division he chose to make of it between them. It was his unquestionable right to divide, value, and charge his lands as he thought proper. The court did not err in allowing credit for this bond also.

The due bill for $222 to R. E. Miller was properly allowed by the court. The evidence establishes that the amount for which it was given was a valid and existing debt of John Miller. Although it bears date on January 12, 1875, and expresses on its face to be for the balance due from him to his said son, on a full settlement of all accounts between them, each item was contracted prior to the execution of the deed of October 5, 1872. This is clearly shown by the original draft of the settlement contained in the record. The settlement was made by the parties themselves in the presence of John B. Miller, and the due bill witnessed by him. A settlement of the accounts between the parties was necessary in order to ascertain the balance due R. E. Miller at the time of the execution of the deed of trust. For obvious reasons, it was desirable that the settlement should be made in the lifetime of the parties, and none were so well quali-

fied to make it as they themselves in the presence of the other trustee.

The charge of fraud made with respect to the obligations excepted to is not sustained by any evidence in the record, and is wholly without foundation. It is incredible, in the absence of the most satisfactory evidence to the contrary, that John Miller should have undertaken, by such means or any other, to deprive by fraud his daughter, Mrs. Smith, and her children, of a just share of his estate in the division thereof, and that his two sons and his son-in-law, Jones, should have conspired with him and united in any scheme which would directly result in lessening the value of the shares of his estate given to his sons and his daughter, Mrs. Jones.

The last assignment of error relates to the refusal of the lower court to set aside the sale of the "Hogback" tract of land. This presents a much more serious question than those which we have been considering.

By the deed of trust and settlement, John B. Miller and R. E. Miller were made the trustees to execute its many important provisions. Among other things, it became their duty to sell the mountain land called the "Hogback" tract, for the payment of the debts of the grantor, John Miller, which were primarily secured by the said deed. At the sale thereof, John B. Miller became the purchaser; and one of the main objects of this suit was to set aside the sale, and require the purchaser to account for all rents, issues, and profits derived from the land. The ground upon which it was asked that the sale be set aside was that John B. Miller, being one of the trustees to sell, and so acting, could not buy at his own sale.

The testimony does not seem to leave in any doubt the fact, claimed by John B. Miller, that he had no desire to buy the land, and only bid for it at the sale to try and make it bring its full value, or a fair price. After it was cried out to him, he explained to his co-trustee his reasons for bidding, disclaimed

being the purchaser, and authorized his co-trustee to sell the land to any one else who would give the price at which it had been cried out to him, but was told that he would be held to his bid. It was shown that he had sold from the land, for which it was alone valuable, tan bark and timber to a large amount; and it was alleged, and much testimony taken to prove, that he had derived great profit therefrom, while on the contrary, it was as earnestly attempted to be shown that there had been no gains, by the reason of the very great expense to which the purchaser was put in opening up the land and in making roadways rendered necessary by reason of the mountainous and rough character of the land, and the inaccessibility of the timber upon it, without such roadways. However these facts may be, "an inexorable principle of public policy," renders it unnecessary to consider and determine the result, for it is a settled principle of equity that trustees and all persons acting in a confidential character with respect to the subject of sale are disqualified from purchasing the property for themselves. The characters of buyer and seller are incompatible, and cannot be safely exercised by the same person. The validity of a sale in such case does not depend upon its fairness, but the sale is voidable, and when attacked, must be set aside, although the price was fair, or the best to be had, and the motive pure. *Harrison* v. *Manson*, 95 Va. 593; *Tennant* v. *Dunlop*, 97 Va. 241; *Carter* v. *Harris*, 4 Rand. 199; *Howery* v. *Helms*, 20 Gratt. 1; *Bailey* v. *Robinson*, 1 Gratt. 4; and *Buckles* v. *Lafferty*, 2 Rob. 292, and note thereto.

The sale was made in 1883, and this suit was not brought until 1896. It is contended that, although the sale be invalid, the parties interested, after such lapse of time, must be deemed to have ratified, or acquiesced in, the sale, and are now estopped to contest it.

The burden of proving ratification, or acquiescence, is upon him who alleges it, and there is no proof in the record upon which the parties complaining can be held to have ratified, or

acquiesced in, the sale. The proof is wanting that they knew of the sale and the facts connected therewith, until since the institution of this suit. Although the sale was made in 1883, the report thereof was not even returned to the clerk's office until 1888. They cannot be held to have ratified, or acquiesced in, that of which they were ignorant. Ratification and acquiescence imply knowledge. They cannot be imputed in the absence of all knowledge of the facts on which they are predicated. There must be knowledge of the facts out of which rights arise before there can be a waiver of those rights. The law does not hold one to have waived his rights, unless, with full knowledge of the facts, he has distinctly waived them. *Hotchkiss* v. *Middlekauff*, 96 Va. 656; *Wilson* v. *Carpenter*, 91 Va. 192; *Montague's Adm'r* v. *Massie*, 76 Va. 307; and *Rowe* v. *Bently*, 29 Gratt. 756.

And, besides, in this particular case, the parties complaining are a married woman, who, both at the time of the sale and of the execution of the deed of settlement of October 5, 1872, was, and still is, under the disability of coverture, and her children, two of whom were infants when this suit was brought, and the other two had only attained their majority a few years previously.

It follows that the sale of the 600 acres of the "Hogback" tract must be set aside, and so must also the sale of the residue thereof of 275 acres to the same purchaser, for reasons aforesaid.

As a result of the setting aside of the said sales, an account must be taken of all rents, issues, and profits derived by John B. Miller from the said lands since his purchase thereof, with which he shall be debited; and, as the sales were only constructively fraudulent, and not in anywise tainted with actual fraud, he is entitled to be credited with the purchase money paid by him, with interest thereon, and with the value of all permanent and substantial improvements made by him on the lands since

he purchased the same. *Harrison* v. *Manson,* 95 Va. 593; and *Henderson* v. *Hunton,* 26 Gratt. 926.

For the foregoing reasons, the decree appealed from, in so far as it confirms the sale of the said lands to John B. Miller, must be reversed, and the cause remanded to the Circuit Court, to be further proceeded in, in accordance with the views expressed in this opinion.

*Reversed.*