## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Bertha Brickhouse Wright

v.

Edwin C. Kellam

November 3, 1971

Case No. (Chancery) 12968

BY JUDGE PHILIP L. RUSSO

The complainant, Bertha Brickhouse Wright, testified that her husband died on November 15, 1955, and that she became the owner of the property which is the subject of this suit. She did not remember signing the note involved in this case but could not deny having done so. She received her tax notices on the property until the year 1966, and she did not receive a notice for that year. She referred to them as tax receipts. When she did not receive the 1966 tax bill, she spoke with the defendant, Edwin C. Kellam. She and a Lindsay Johnson, at some point, went to see Mr. Kellam and were told by Mr. Kellam that it would cost her some $1,200.00 to $1,400.00 to get the property back. She had never made any payments on the note. Mr. Kellam told her to go back to the property and live there as she had always done, and that is what she did.

Insofar as the foreclosure sale was concerned, she received no notice thereof and she saw nothing in any newspaper and saw no posted notices. She said that she had received no notices from Mr. Kellam demanding payment of the note. She said that her mailing address had been changed.

On cross-examination, she said that she received mail addressed to Bayside, Virginia, prior to having an Independence Boulevard address. She went to see the defendant sometime in 1966, and she lived on the property for over a year after that. She received tax bills through the year 1965.

Lindsay Johnson testified that he knows the complainant and they are friends; that he and the complainant went to see the defendant in 1966, and that the defendant was waving a card and telling the complainant that she had signed it and that it would cost her between $1,200.00 and $1,400.00 to get the property back. The defendant further told her to go on back home and continue to live as she had been living. The defendant said that if he could, he would move the house back from the road. On cross-examination, he said that it was before August, 1966, when he and the complainant came down to the Clerk's office to check on her tax receipts. He further said that the complainant moved out in 1968, and that it was getting cold when she did move out.

The defendant, Edwin C. Kellam, was next called as an adverse witness and stated that he has been a practicing attorney at law for about thirty years; that he has been and is now a trustee in many deeds of trust; that the exhibits introduced by the complainant are genuine; that the loan was made in May, 1955; that no payments were made on the loan; that he wrote several letters to the complainant in regard to the loan and received no response and that the letters were sent to Bayside, Virginia. He further stated that he wrote these letters regularly and received no response.

Insofar as the foreclosure is concerned, he stated that he advertised the property for sale by posting notices in five different places in Virginia Beach; that he could not say where the notices were posted; that as a trustee he went to the courthouse at Princess Anne Station in the City of Virginia Beach to conduct the auction; that at the same time the subject property was sold, he sold another piece of property involving other parties; that there were no bidders at the sale so he went across the street to ask a certain Robert Lee, who was working in his brother's store, to attend the sale; that the said Robert Lee bid in the property for what he believed to be $250.00 since he has a notation to that effect; and that Robert Lee assigned his bid to the defendant's law partner, Joseph Lawler. He further said that he was not aware of the Atlantic Permanent Building and Loan Association loan; that he did not check the records to ascertain the assessed value of the property; he did not have the property appraised, nor did he know that Independence Boulevard was coming through. He testified that the taxes for 1966 were deducted from the sale of a portion of the property to the Highway Department; that the noteholder was paid the net proceeds of said sale. He then said that he is

certain that he filed an accounting with the Commissioner of Accounts but that he has no receipt from said Commissioner of Accounts. He further testified that the complainant and Lindsay Johnson came in to see him; that he has corresponded with Andre Evans, counsel for the complainant, for a long period of time in connection with this matter and that his law partner, Joseph Lawler, and his wife conveyed the property to him.

The next and final witness was Margaret Hood, a Deputy Clerk of the Circuit Court of the City of Virginia Beach, who testified that there is no record of an accounting for the foreclosure sale involved in this case. On cross examination, Mrs. Hood testified that such accountings are sent to the Commissioner of Accounts and that two prior Commissioners, namely, Messrs. Barr and Walton, both died suddenly while in office.

In addition to the above testimony, many exhibits were introduced. Some of these were a deed of trust on the subject property dated August 27, 1954, to the trustees of Atlantic Permanent Building and Loan Association to secure a loan for $700.00; the deed of trust which is the subject of the foreclosure sale in this suit dated May 14, 1955, to secure the sum of $250.00; a check from Kellam and Kellam, attorneys, payable to John Wright dated May 14, 1955, in the sum of $200.00 with the notation "loan secured by deed of trust"; a trustees' deed dated June 2, 1965, and recorded November 4, 1966, from the trustees of the deed of trust foreclosed upon in the suit at bar to Joseph J. Lawler; a deed of bargain and sale dated November 2, 1967, and recorded November 7, 1967, from Joseph J. Lawler, et ux., to Edwin C. Kellam and a certificate of taking of a portion of the subject property by the City of Virginia Beach for $2,269.00 recorded June 19, 1968.

Whatever the other facts may be, it appears to the court that without doubt, the foreclosure sale was advertised by the posting of notices; that there was no newspaper publication of the sale; that the complainant did not know of the sale; that when the defendant as a trustee went to conduct the sale, there were no bidders present; that he went across the street to his brother's store to obtain a bidder; that a certain Robert Lee, an employee at his brother's store, came over to the sale and made a bid in the sum of $250.00 which was the principal amount of the note; that Robert Lee assigned his bid to the defendant's law partner, Joseph Lawler; that the defendant as a trustee conveyed the property to Joseph Lawler and that the said Joseph Lawler subsequently conveyed the property to the defendant.

The case of *Rohrer v. Strickland*, 116 Va. 755 (1914), states that:

> If a trustee finds there is no bidder present except the creditor, or only sham bidders, he should adjourn the sale.

The court cited many cases to substantiate this proposition of law.

In the case at bar, there were no bidders present. The complainant did not know of the sale, and she was not there. The defendant went across the street from the place of the sale to his brother's store to obtain a certain Robert Lee, an employee at his brother's store, to come to the sale as a bidder, and the said Robert Lee bid the property in for the exact amount of the note, namely, $250.00. The defendant testified that he did not know who was the holder of the note and that it may have been him. One thing that is known is that the check dated May 14, 1955, payable to the order of John Wright for $200.00 was a Kellam & Kellam, Attorneys and Counsellors at Law, check.

The case of *Linney v. Normoyle*, 145 Va. 589 (1926), says that, "A trustee in a deed of trust is the agent of both parties and bound to act impartially between them; nor ought he to permit the urgency of the creditors to force the sale under circumstances injurious to the debtor at an inadequate price. He is bound to bring the estate to the hammer, as has been said by Lord Eldon, 'under every possible advantage to his *cestui que trust*,' and he should use all reasonable diligence to obtain the best price." The court then went on to say that it is not necessary that actual fraud be made to appear.

In the case at bar, the sale was advertised solely by posting notices in five public places in the City of Virginia Beach. Under these circumstances, the complainant would hardly have a chance of knowing about the sale, and, indeed, she testified that she did not know of the sale. Also, as aforestated, there were no bidders present so the defendant went across the street to get a bidder who was an employee at a store owned by the defendant's brother, which bidder made a bid of $250.00, the exact amount of the note, and assigned his bid to the defendant's law partner.

In the case of *Smith v. Miller*, 98 Va. 535 (1900), a certain John B. Miller was a co-trustee under a deed of trust. At the sale, he became the purchaser of the property. One of the main objects of the suit was to set aside the sale and require Miller to account for all rents, profits, and issues derived from the land. The ground upon which it was asked that the sale be set aside was that the said Miller, as one of the trustees, could not buy at his own sale.

The testimony left no doubt that Miller had no desire to buy the land and only bid it in to try and make it bring its full value or a fair price. After it was knocked down to him, he explained to his co-trustee his reasons for bidding, disclaimed being the purchaser, and authorized his co-trustee to sell the land to anyone else who would give the price at which it had been knocked down to him, but he was told that he would be held to his bid. The sale was made in 1883, and the suit was not brought until 1896. It was contended by Miller that although the sale be invalid, the parties interested, after such lapse of time, must be deemed to have ratified or acquiesced in the sale, and were estopped to contest it. The sale was made in 1883, but the report of the sale was not returned to the Clerk's office until 1888.

The court said:

> However these facts may be, an inexorable principle of public policy renders it unnecessary to consider and determine the result, for it is a settled principle of equity that trustees and all persons acting in a confidential character with respect to the subject of sale are disqualified from purchasing the property for themselves. The characters of buyer and seller are incompatible and cannot be safely exercised by the same person. The validity of a sale in such a case does not depend upon its fairness, but the sale is voidable and, when attacked, must be set aside, although the price was fair, or the best to be had, and the motive pure.

In the case at bar, it appears to the court that the defendant did indirectly what the court in the *Smith v. Miller* case, *supra*, said that Miller could not do directly.

Counsel for the defendant, in his memorandum, has spent a great deal of time arguing *laches*. It was not pleaded by him and was raised for the first time in his memorandum. Also, as noted in the *Smith v. Miller* case, *supra*, the sale was made in 1883, and suit was not brought until 1896, but the court, nevertheless, set the sale aside and ordered an accounting.

Counsel for the defendant, in his letter of October 26, 1971, has cited the case of *Cromer v. DeJarnette*, 188 Va. 680 (1949). There is an important distinction between that case and the case at bar, namely, that in the *Cromer* case, the appellant knew of the sale. He was informed by his sister that the property was about to be sold. In the case at bar, the evidence is to the effect that the complainant did not know of the sale.

In light of all of the facts and circumstances involved in this case, the court is of the opinion that the sale should be set aside, the property should be reconveyed to the complainant, and an accounting be had between the parties.