## Richmond.

### NANNIE R. BOWLES AND MILDRED SHELTON PAYNE v. JAMES BOWLES, ET ALS.

January 15, 1925.

1. TRUSTS AND TRUSTEES—*Sales of Trust Property—Purchase by Trustee.*— A trustee has no right to purchase the property he is selling, since he cannot occupy the position of seller and buyer at the same time. Such sale, even though the price be fair and adequate and the trustee's motive pure, will be set aside upon the application of the proper party.

2. SALES—*Purchaser—Duty Inconsistent with Character of Purchaser.*—No person can be permitted to purchase an interest where he has a duty to perform which is inconsistent with the character of purchaser.

3. TRUSTS AND TRUSTEES—*Purchase of Trust Property by Trustee—Void or Voidable.*—A trustee cannot purchase the whole of the trust subject from the beneficiary. The transaction in such cases is not void, but voidable, and voidable only at the election of the *cestui que* trust, who alone has the privilege of annulling the transaction, since he alone was injured, if there was a breach of trust.

4. TRUSTS AND TRUSTEES—*Purchase of Trust Property by Trustee—Void or Voidable—Heirs of a Cestui Que Trust.*—Though the *cestui que* trust might have an agreement under which the trustee purchased the trust estate cancelled, his heirs at law are not entitled, in the absence of fraud, duress or want of capacity, to any such privilege, and certainly not after the lapse of fourteen years after the death of the *cestui que* trust.

5. TRUSTS AND TRUSTEES—*Purchase of Trust Property by Trustee—Evidence to Establish Fraud or Duress.*—Where the beneficiary conveyed the trust estate to the trustee in consideration of the trustee supporting him for life, charges by the heirs of the beneficiary that he was mentally incompetent and that he was defrauded, made fourteen years after his death, must be established by complainants, with whom the burden of proof is, by clear and convincing testimony.

6. EXECUTORS AND ADMINISTRATORS—*Settlement in Pais—Case at Bar.*—In the instant case a father was sole distributee of a son killed by a railroad. At the father's suggestion another son qualified as administrator and recovered $1,500.00 from the railroad. The father then

gave the $1,500.00 to the son in consideration of support for life. Fourteen years after the father's death his heirs asked for the cancellation of this agreement on the ground of mental incapacity and fraud.

*Held:* That the contract between father and son constituted a settlement *in pais* by the administrator with the sole distributee.

7. Support and Maintenance—*Fraud—Mental Capacity—Case at Bar.*— In the instant case a father, in consideration of support for his life, gave his son $1,500.00. Fourteen years after the father's death the agreement was attacked by the father's heirs for fraud and want of mental capacity. A number of reputable witnesses testified to the mental capacity of the father and that he understood the transaction.

*Held:* That it appeared from the evidence that the father was competent to contract, that the contract was not obtained by fraud and expressed his true intent.

8. Executors and Administrators—*Settlement—Validity.*—An administrator has the right to settle with the distributee in money or services, or other valuable considerations which may be agreed upon, and such settlement, being voluntarily made for a fair consideration, is binding upon both of the contracting parties.

9. Decree pro Confesso—*Surety on Administrator's Bond—Suit for Settlement—Appearance of Surety.*—In a suit against an administrator and his surety for settlement it was contended that because the surety made no appearance there was a decree *pro confesso* against it. The record showed that the surety filed its demurrer and answer; that the court overruled the demurrer; and that the complainants replied generally to the answer, the cause being then docketed and set for hearing as to the surety.

*Held:* That an issue of fact being joined between the complainants and surety, the dismissal of the suit settles this issue adversely to the complainants.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*D. C. O'Flaherty* and *J. C. Robertson*, for the appellants.

*Brockenbrough Lamb, Jno. P. Leary,* and *Wellford & Taylor,* for the appellees.

WEST, J., delivered the opinion of the court.

On April 18, 1903, Charles Bowles was killed as a result of the negligence of his employer, the Southern Bell Telephone and Telegraph Company. On May 21, 1903, at the suggestion of his father, Edmund Bowles, who was his sole distributee, James Bowles, brother of the deceased, qualified as administrator for the purpose of instituting a suit under the statute to recover damages for his death. Charles Bowles left no estate.

The damage suit resulted in a judgment for $3,000.00, one half of which was paid to the plaintiff's attorneys and the remaining one half went into the hands of James Bowles, administrator, and was the property of Edmund Bowles, the sole distributee, the jury not having directed any other distribution.

After the suit terminated James Bowles reported the result to his father, Edmund Bowles, who on December 1, 1904, entered into the following agreement with James Bowles:

"In consideration of his agreement to support and care for me during the remainder of my life, and in other valuable considerations, I do hereby give, assign, and transfer unto my son, James Bowles, all of my right, title and interest in and to the judgment of the United States circuit court, for the eastern district of Virginia, in the case of *James Bowles, administrator of Charles Bowles, deceased,* v. *The Southern Bell Telephone and Telegraph Company, a corporation, etc.,* rendered on or about the 22nd day of November, 1904, for the sum of $3,000.00, my said right, title and interest therein, being one-half interest, to-wit: For $1,500.00, the

remaining one-half of said judgment being due to
Messrs. Smith, Moncure & Gordon, and Robert H.
Talley, attorneys for the plaintiff in said suit.    And I
do give this said sum to my said son, James Bowles,
absolutely, without condition or restriction of any kind
whatever.

"Given under my hand this 1st day of December in
the year of 1904.

his<br>
"EDMUND    x    BOWLES"<br>
mark

"Witnesses:

"J. C. Miller,

"Rufus Bowles."

On January 7, 1906, Edmund Bowles departed this
life, intestate.   On May 6, 1920, Nannie R. Bowles,
daughter, and Mildred Shelton Payne, granddaughter,
heirs at law of Edmund Bowles, deceased, filed the bill
in this cause for the settlement of the accounts of James
Bowles, administrator of Charles Bowles, deceased, and
the payment to the heirs at law of Edmund Bowles,
deceased, of the $1,500.00, which it is alleged had not
been accounted for by said administrator.   The bill
was subsequently amended alleging that the agreement
of December 1, 1904, was obtained through fraud,
duress, error and misrepresentation by James Bowles.
The defendant, James Bowles, demurred, plead the
statute of limitations and answered denying the fraud,
duress and misrepresentation, and alleging that the
agreement of December 1, 1904, was valid; that he had
complied with its terms on his part, and owed the com-
plainants nothing.

Upon the final hearing a decree was entered adjudg-
ing that the complainants are not entitled to the relief
prayed for and dismissing the original and supplemental

and amended bills. This decree is now before us for review.

The questions raised by the pleadings are the statute of limitations, laches, the right of the complainants to a decree of reference requiring James Bowles, administrator of Charles Bowles, deceased, to account for and settle the estate of his *decedent*, and the validity of the contract of December 1, 1904.

It is a *concessum* that James Bowles had in his hands $1,500.00 which belonged to Edmund Bowles, sole distributee of Charles Bowles, deceased, at the time the contract of December 1, 1904, was entered into.

Appellants contend that this contract is *prima facie* void and should be set aside upon the principle that trustees and all other persons acting in a fiduciary character with respect to the subject matter of sale are disqualified from purchasing the property themselves.

[1] A trustee has no right to purchase the property he is selling since he cannot occupy the position of seller and buyer at the same time. Such sale, even though the price be fair and adequate and the trustee's motive pure, will be set aside upon the application of the proper party. *Harrison* v. *Manson*, 95 Va. 593, 29 S. E. 420; *Smith* v. *Miller*, 98 Va. 541, 37 S. E. 10.

[2, 3] No person can be permitted to purchase an interest where he has a duty to perform which is inconsistent with the character of purchaser. A trustee cannot purchase the whole of the trust subject from the beneficiary. The transaction in such cases is not void but voidable, and voidable only at the election of the *cestui que* trust, who alone has the privilege of annulling the transaction, since he alone was injured, if there was a breach of trust. *Bresee* v. *Bradfield*, 99 Va. 340-341, 38 S. E. 196.

In the *Bresee-Bradfield Case*, *supra*, O. F. Bresee,

trustee, purchased the whole of the trust subject from the beneficiary, Mrs. M. B. Nalle.   The court held that upon her alone devolved the privilege of annulling the transaction, and that Bresee would be declared a trustee for her benefit were the deed set aside at her instance, but that privilege invoked does not operate for the benefit or protection of her creditors.

[4] In the instant case, treating the agreement of December 1, 1904, as a purchase of the trust estate, rather than the settlement *in pais* by the administrator, Edmund Bowles was the *cestui que* trust and the administrator his trustee.  So treating it, Edmund Bowles, on account of that relation, could have had that agreement cancelled, but his heirs at law are not entitled to any such privilege, certainly not after the lapse of fourteen years after the death of Edmund Bowles.

[5] After so long a lapse of time, having by delay deprived the administrator of the testimony of four of his brothers and sisters, and Mrs. Duke, a white friend, all of whom had died in the meantime, to refute the charge of mental incompetency of Edmund Bowles, and the charge that he was defrauded by the agreement of December 1, 1904, the burden is upon the complainants to establish these charges by "clear and convincing testimony."

These facts clearly appear from the evidence:

Shortly after the recovery of the $1,500.00 from the telephone and telegraph company, James Bowles, the administrator, reported the result of the suit to Edmund Bowles, his father, sole distributee of the estate of Charles Bowles, deceased.   Thereupon Edmund Bowles told James he wanted him to keep the money and take care of him as long as he lived and the rest of the money he could have for himself.   James then went to R. H. Talley, Esquire, a prominent member of

the bar of the city of Richmond, who prepared the agreement of December 1, 1904, and delivered it to James, with detailed instructions as to the manner in which it should be executed by Edmund Bowles.

Edmund Bowles made an appointment with J. C. Miller to meet him and James Bowles at the home of Mrs. Duke, the mother of Miss Alberta N. Duke. The Dukes were old friends of Edmund Bowles, he having been owned in slave days by that family. Edmund Bowles executed the paper in the home of his best white friend and in the presence of a justice of the peace, J. C. Miller, one of the subscribing witnesses, who was for twelve years a justice of the peace for Goochland county, testified clearly and positively that he read the agreement to Edmund Bowles and explained it to him just before he signed it and was certain that Bowles was capable of understanding and did understand the transaction. Rufus Bowles, another subscribing witness, testified that he heard Miller read the agreement to Edmund Bowles and that his (Edmund's) mind was clear and all right. Miss Alberta N. Duke, witness for complainants, says that some time after he had executed the paper she heard Edmund Bowles tell her mother that he "had placed his money in Jim's hands as his guardian and Jim had promised to take care of him." His last words were, "send for Jim." Miller testified further that Mrs. Duke knew what the contents of the paper were, and would probably have signed as a witness, except for the fact that he informed her that she would probably have to go to Louisa Courthouse to prove the paper for recordation. After execution Edmund Bowles delivered the paper to James Bowles, who shortly thereafter exhibited it, duly executed by his father, to Mr. Talley in his office in

Richmond.   Mr. Talley inspected it and handed it to James Bowles who put it in his trunk.

It also sufficiently appears from the record that James Bowles fully carried out his part of the agreement with his father.   He contributed regularly and amply to his support by sending the money to his sister, Sallie Johnson, with whom Edmund made his home.   Upon Edmund Bowles' death James arranged for his burial and paid the funeral expenses.

[6, 7] It is plainly apparent that Edmund Bowles was competent to contract in 1904, that the contract of December 1, 1904, was not procured by fraud and contains his true intent and wishes, as to the money due to him by James Bowles.

In our view this contract constitutes a settlement *in pais* by the administrator with Edmund Bowles, sole distributee.

[8] The administrator had the right to settle with the distributee in money or services, or other valuable considerations which were agreed upon, and such settlement being voluntarily made for a fair consideration, is binding upon both of the contracting parties.

On the other hand, if the contract be treated as a purchase of trust property from the *cestui que* trust by a fiduciary, the transaction, in the absence of fraud, cannot, for the reasons stated, *supra*, be set aside upon the application of the complainants.

It is contended that because the defendant, American Surety Company, surety on the bond of James Bowles, administrator, made no appearance until June 26, 1922, when its answer was filed, there was a judgment *pro confesso* against it for $500.00 which has not been set aside.

[9] The record shows that the American Surety Company filed its demurrer and answer, that the court over-

ruled the demurrer, and that the complainants replied generally to the answer, the cause being then docketed and set for hearing as to the American Surety Company. An issue of fact being joined between the complainants and American Surety Company, the dismissal of the suit settles this issue adversely to the complainants.

The conclusions we have reached upon the matters discussed make it unnecessary to consider any other questions raised by the pleadings.

We find no reason for reversing the decree complained of.

*Affirmed.*

BURKS, J., concurs in result.