# Richmond

MRS. D. A. KISER v. AMALGAMATED CLOTHING WORKERS OF
AMERICA.

January 13, 1938.

Present, Campbell, C. J., and Holt, Gregory, Browning,
Eggleston and Spratley, JJ.

The opinion states the case.

*Jos. I. Nachman* and *S. D. Timberlake, Jr.,* for the plain-tiff in error.

*Walter Brower, Louis Waldman* and *Charles Curry,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The Amalgamated Clothing Workers of America, the defendant in the trial court and the defendant in error here, who will hereafter be referred to as the defendant, is a labor organization, and its agents and organizers came to the city of Staunton, Virginia, in 1934, for the purpose of securing members and organizing the workers employed in the men's clothing industry, which craft was its specialty.

In the early part of 1935, the plaintiff in error, Mrs. D. A. Kiser, the plaintiff in the trial court and who will hereafter be referred to as the plaintiff, was employed by the firm L. Grief Brothers and was induced to join the defendant labor union upon an agreement or contract, *in haec verba:* "that should she lose her employment at the plants of L. Grief Brothers, by reason of joining the said labor union, the said union would pay her the salary that she was earning at the time she lost her employment, and would continue to pay the same until she should obtain other employment, or until such other employment was provided for her by the said union." This, with its significance and construction, is the crux of the whole controversy.

Immediately upon joining the defendant labor union the plaintiff was discharged by L. Grief Brothers, for the reason that she had joined the labor organization. At that time she was earning $18.00 per week. Since that time she has been unable to secure other employment, nor has such employment been provided her by the defendant labor union.

The defendant organization paid the plaintiff $5.00 per week from March 5, 1935, the date she was discharged, to September 1, 1935, and $7.50 per week from that date to January 18, 1936, when it ceased all further payments.

Sixteen similar actions were brought against the defendant and fourteen (two having been withdrawn) are on the docket awaiting the result of this case.

The plaintiff filed a bill of particulars and a petition for attachment, both of which were subsequently amended, and the defendant moved to quash the petition and filed a demurrer thereto, urging twenty grounds of defense. The trial court overruled the motion to quash but sustained the defendant's demurrer and the case is here for review on a writ of error awarded.

The defendant does not deny the existence of the contract, or agreement, but alleges that it is unenforceable for varied reasons and cites much authority as supporting its contentions. There is unquestionably some contrariety of authority on the questions at issue but its weight, we think, supports the validity of the contract.

The defense may be reduced to six main allegations, which we will consider briefly in their order.

(1) The defendant urges that the alleged contract is too indefinite and uncertain to be made the basis of an action at law.

In support of this contention the defendant cites the following from the case of *Belmont* v. *McAllister,* 116 Va. 285, 81 S. E. 81, 87:

"It is needless to cite authority for the rule of law which is in fact elementary, that. a contract to be valid and enforceable must be so certain that each party may have an action upon it, and to constitute a complete contract the minds of the parties must meet in mutual agreement on every material phase constituting the alleged agreement."

The case of *Powell* v. *Tilson,* 161 Va. 318, 170 S. E. 750, 755, is also cited by the defendant as authority for its contention that the contract here presented is too vague, uncertain and indefinite to be capable of enforcement.

The citation from the first of the above cases is but the statement of a general requisite of a contract, which is found in an opinion in a case in which there was really no contract. The minds of the parties never met on any element of the alleged agreement and the plaintiff in the trial court, who was the appellee in this court, admitted in his testimony that he and Mrs. Belmont, the appellant, did not

at any time actually reach the agreement which was set up in the bill.

In the second case referred to, there was a paper or memorandum urged as a contract in which a consort relinquished her dower right in certain of her husband's real estate, stating that, as she had ample means for her own needs, she wished his property to go to his children unencumbered by her marital interests. The money consideration for the attempted relinquishment of dower was stated to be $100. As this was alleged to be patently inadequate, it was urged by the parties seeking to establish the contract, that her desire to release the property was a part of the consideration for the execution of the paper. The court, in this connection, said: "The recital of the reason upon or motive from which a person acts in making a contract, does not necessarily make it a consideration for the making of the contract."

It would thus seem that these cases are inapposite as having no specific bearing upon the questions at issue. They afford only general observations as to some of the requisites of contracts.

The contract, or agreement, in question promises the plaintiff that if she joins defendant's union and loses her position because of such action the union will continue her salary until she is again employed. Here the plaintiff has fully complied with her part of the agreement and, of course, there can be no action against her.

The contract in question is rather analogous to a contract of health insurance, in which the insurer, in consideration of premium payments, promises to pay the insured an agreed amount when and so long as he remains disabled. The difference here is in favor of the defendant in that it can terminate the period of unemployment at any time by providing or securing work for the plaintiff, while the insurance company has no such alternative. No one would attempt to say that a contract for health insurance was too indefinite to be enforceable.

Contracts and agreements which constitute the foundation of business relations among persons and interests are made to be kept, not broken. If this were not so, faith in men's transactions in the commercial and trading world, indeed in all the material activities of life, would be so shaken as to imperil the structure of business existence. Regard for the faithful performance of contracts has the sanction of the law. Those who violate their contracts to the hurt and detriment of others with whom they contract must answer in some appropriate way for the injury done.

■ It was said in *McIntyre Lumber, etc., Co.* v. *Jackson Lumber Co.,* 165 Ala. 268, 51 So. 767, 770, 138 Am. St. Rep. 66, 69: "The law does not favor, but leans against, the destruction of contracts because of uncertainty; it will, if feasible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. *Boykin* v. *Bank of Mobile,* 72 Ala. 262, 47 Am. Rep. 408."

(2) The defendant alleges that the plaintiff fails to aver compliance on her part with the constitution and by-laws of the defendant and the performance of a condition precedent.

■■ It is not incumbent upon the plaintiff to prove her position in relation to this allegation. Rather, it is defensive matter, to be urged and established by the defendant. On the other hand, if this is analogous to a benefit association, as the defendant urges, then the plaintiff has shown the defendant that she is entitled to enjoy benefits from it. In fact, the defendant did pay such benefits for some nine months. It must, then, have been satisfied upon this point.

(3) The defendant alleges a lack of legal consideration given in support of the contract.

■ The defendant was seeking expansion in new fields and an enlarged membership was of great value and help toward the achievement of this end. Certainly, then, the agreement of the plaintiff to join the defendant's union was worth something to the defendant, and the fact that she lost

her employment because of her action in joining the union shows that the agreement was a detriment to her.

■ "The detriment of the promisee which suffices as a consideration for a contract must be a detriment on entering into the contract, not from the breach of it." 13 C. J. 317, 318.

It is plain here that the detriment suffered by the plaintiff was the result of her contract to join the union, and this detriment must have been sensed in advance or the promise made by the defendant would not have been evoked. There was never a breach on her part of the agreement.

In the case of *McIntyre Lumber, etc., Co.* v. *Jackson Lumber Co., supra,* this quotation from the case of *Storm* v. *U. S.,* 94 U. S. 76, 24 L. Ed. 42, was quoted with approval: "Agreements are frequently made which are not, in a certain sense, binding on both sides at the time when executed, and in which the whole duty to be performed rests primarily with one of the contracting parties * * *.

"Cases often arise where the agreement consists of mutual promises, the one promise being the consideration for the other; and it has never been seriously questioned that such an agreement is valid, and that the parties are bound to fulfill their respective stipulations."

"It has been held further that the relinquishment of a present position in reliance on a promise to give permanent employment is a sufficient consideration for such a contract, that such a contract is not void as indefinite, or as wanting in mutuality because the employee is not bound to continue in the employer's service, or because the employee might terminate the contract at will, although the employer is bound. And such a contract is not void for uncertainty, for lack of a stipulation as to the compensation, or character of the services to be rendered." 39 C. J. 41, sec. 13.

■ There was no absence of mutuality in the contract in question. The plaintiff's agreement was to join the union, which she did. She should be accorded such benefits as were promised her for this consideration. The mere fact

that the defendant may have promised more than it asked in return cannot be an adequate ground of defense now.

In the case of *Pennsylvania Company* v. *Dolan,* 6 Ind. App. 109, 32 N. E. 802, 805, 51 Am. St. Rep. 289, 294, 295, the following was said: "The further contention of appellant's counsel is that the alleged parol agreement lacks the element of mutuality. He argues that in every contract of hiring and service there must be a two fold obligation,— the one on the part of the employer to hire, and the other on the part of the employee to serve—and this must be for a definite time. He insists, further, that an employment for an indefinite time is an employment at the will of the parties, and so, when the term of service is left to the discretion of either party, it is at the will of either. These propositions are doubtless correct as abstract statements of law; and, whatever force they might have when applied to an ordinary case of hire, they can have no application when the consideration for the employment is paid, partially at least, as it was here, in advance. Suppose that instead of the release executed by the appellee, he had paid the appellant five hundred dollars in cash, in consideration of which the latter had agreed to employ the former as a flagman in its yards during his life, at the rate of two dollars per day. Could it be held that the want of mutuality would entitle the appellant to keep the five hundred dollars, and after a few months of employment, and without any fault on his part, discharge him? We think not. There is no want of mutuality in such case. The appellee has parted with value, and the appellant owes him a reciprocal obligation; and that is to furnish him work at stated wages to enable him to make a living, or partly so. There is no difference in principle between the case supposed and the one in hand. Here the appellee has relinquished a claim against the appellant that had a certain value. He has placed it beyond his power to recover upon that claim, and the appellant has received a corresponding benefit. The appellant, recognizing his obligation in the premises, gives the appellee employment for a short time, and then, with-

out the latter's fault, and without any just cause, and in violation of the terms of its agreement, discharges him, and leaves him in his crippled condition to buffet with the world as best he can. This is, in our estimation, a flagrant breach of contract, and courts exist to a poor purpose if they can give no redress for such a wrong.

"We do not think the points as to want of mutuality and indefiniteness are well taken. Having determined that the contract as to time is sufficiently definite, it follows, we think, that the rule must be applied that where a servant, who has been hired for a definite period, has been discharged by the master before the expiration of such term, he has his remedy in an action for damages for the breach of the contract: *Richardson* v. *Eagle Machine Works,* 78 Ind. 422 [41 Am. Rep. 584]; 14 Am. & Eng. Ency. of Law, 797; 2 Sutherland on Damages, 471; Wood on Master and Servant, 194; 1 Addison on Contracts (8th Ed.) top p. 450 *et seq.*; 2 Sedgwick on Damages, secs. 607, 664 *et seq.*"

(4) The defendant contends that his alleged promise is not enforceable as there is no writing to satisfy the statute of frauds.

The contract in this case does not present such a promise or agreement as comes within the operation of the statute of frauds. In it we do not perceive an agreement to stand for the debt, default, or misdoing of another. The agreement was that if the plaintiff lost her job on account of joining the labor union the defendant would pay her the amount of money she was then getting until she secured a position of employment by her own efforts or through those of the defendant. By a process of subtle reasoning the defendant attaches some sort of turpitude or blame to the eventuality of losing her position which comes within the meaning of the word "misdoing" employed by the statute. There is nothing to indicate that the loss of her job would eventuate by foul or fair means, with cause, or arbitrarily. The reasoning is strained and fallacious.

In the case of *Pennsylvania Company* v. *Dolan, supra,* we find the following: "It has, however, been frequently de-

cided that where a contract is personal in its character, as a contract for personal services, which might terminate with the death of the party making it, though the contract be for an indefinite period or a term of years, it is not within the statute of frauds. *Hill* v. *Jamieson,* 16 Ind. 125 [79 Am. Dec. 414]; *Indiana, etc., Ry. Co.* v. *Scearce,* 23 Ind. 223; *Straughan* v. *Indianapolis, etc., R. Co.,* 38 Ind. 185; *Marley* v. *Noblett,* 42 Ind. 85."

(5) The defendant contends that the amended petition should have been dismissed for the reason that it states a new cause of action.

The original petition avers that "* * * said Grief Bros. discharged the plaintiff from her employment because she had become a member of the defendant's labor union." The amended petition states that she "* * * lost her employment at the said plants of L. Grief Brothers for the reason that the undersigned had joined * * *." We cannot agree that the amended petition deviates from the original in any material particulars.

The amendment was perfectly proper and the action of the court in allowing it was not error. The liberality of the law providing for amendments to pleadings and its approval by the decisions of this court is a matter that is too well settled to necessitate citation of authority for it.

(6) The defendant contends that the damages, if any, suffered between the time the plaintiff was discharged and January 18, 1936, the date to which defendant paid certain mentioned amounts, have been satisfied by the payments made by the defendant and accepted by the plaintiff; that the damages from that date to March 2, 1936, the date of the institution of this suit, if any, could be at most only a few hundred dollars; and that the plaintiff is not entitled to collect any future damages as they could only be conjectural.

As to the first part of this contention, there is nothing to show whether the plaintiff accepted the benefits from the defendant in full satisfaction; or on account. If they were accepted in full satisfaction it is a matter of de-

fense and the defendant, on the merits of the case, may be permitted to establish it by proof.

As for the right of recovery for future damages, it has been held, in many jurisdictions, that recovery may be had if the damages were reasonably certain to occur or follow.

As to the recovery of speculative or uncertain damages, the rule is stated in 17 C. J. 756, as follows: "The rule against recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent. * * * even in the case of contracts a party who has broken his contract will not ordinarily be permitted to escape liability because of the uncertainty in the amount of damage resulting and the fact that the full extent of the damages for the breach must be a matter of speculation is not a ground for refusing all damages."

In *City of Kennett* v. *Katz Const. Company*, 273 Mo. 279, 202 S. W. 558, this was said: "In applying the rule against recovery of uncertain damages, it is the uncertainty as to their nature, and not as to their measure or extent, that is meant. While the actual amount of damages from the breach of a contract may not be susceptible of exact proof, the law does not permit one whose act has resulted in loss to another to escape liability on this account. The manner of measuring the damages having been ascertained, impossibilities in proving same are not required, but only that the best evidence be adduced of which the nature of the case is capable; in other words, the degree of certainty of the proof is dependent upon the character of the proceeding. Why should greater certainty be required as to proof of the amount of damages than in respect to any other part of a case? All that can be expected in any case is that the relevant facts tending to show the extent of the damages be placed before the jury to enable it to make such an intelligent estimate of the same as the circumstances of the case will admit."

See, also, *Manss-Owens Co.* v. *H. S. Owens & Son,* 129 Va. 183, 105 S. E. 543, 549, in which it was held that, "The violator of his contract should not be allowed to escape all liability simply because the precise amount of the damages for which he is responsible is uncertain. Nearly all commercial contracts are entered into in contemplation of future profits. As such profits are prospective, they must be uncertain and problematical, but the person injured is not to be deprived of all remedy. He has the right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and directly traceable thereto; and it is for the jury, under proper instructions, to determine the compensation to be awarded for the breach. That compensation should be the value of the contract."

See, also, *Agostini* v. *Consolvo,* 154 Va. 203, 153 S. E. 676.

Returning to a discussion of the major contention of the defendant which involves the alleged indefiniteness of the contract, the case of *Chichester's Ex'x* v. *Vass' Adm'r,* 1 Munf. (15 Va.) 98, 4 Am. Dec. 531, is interesting as affording an example of a contract which was upheld by this court under a vigorous attack upon its validity on account of the contention that it was too indefinite to be enforced. "A" promised "B" that if he would marry "A's" daughter, "He will endeavor to do her equal justice with the rest of his daughters, as fast as it is in his power with convenience." It was held that this promise was sufficiently definite for legal enforcement.

The case of *Jones* v. *Carolina Power & Light Co.,* 206 N. C. 862, 175 S. E. 167, is very similar in its facts to the case under consideration. Jones, the plaintiff, was induced by the defendant's agent and superintendent to leave his employment and home in Spartanburg, S. C., and go to Asheville, N. C., to break a strike, the operators of the street cars in the city of Asheville then being out on strike, under the promise that the defendant would give him permanent employment for the term of at least ten years. The plaintiff under this agreement remained in the employ-

ment of the defendant for about six years when he was discharged without cause. Jones instituted suit and there was a verdict and judgment in his favor, which was sustained by the Supreme Court of North Carolina, which held that the contract was not void for indefiniteness, and the court quoted with approval the paragraph from 39 C. J. 41, which we have already incorporated in this opinion. The only difference of any moment between the North Carolina case and this case is that in the former the employment had a duration of ten years. This, however, does not differentiate the two cases in any important point of principle. *Id certum est quod certum reddi potest.*

The duration of the obligation of the defendant could have been made certain in point of time by its procurement of employment for the plaintiff. We think the holding of the last cited case is quite conclusive of the case in judgment.

Everything that has been said in derogation of the validity of the contract in this case could have been urged as forcibly against the contract in that case.

The tendency of the courts is to give to contracts life and virility by interpretation of their fair intendment—not to destroy them. The impressive and terse words that follow point to this.

Williston on Contracts (Revised Ed.), vol. 1, p. 4: "Words which in terms promise the happening or failure to happen of something not within human control, or the existence or nonexistence of a present or past state of facts, are to be interpreted as a promise or undertaking to be answerable for such proximate damage as may be caused by the failure to happen or the happening of the specified event, or by the existence or nonexistence of the asserted state of facts." Restatement, Contracts, section 2(2).

We again note with accentuation the fact that for nine months after the loss of her position the plaintiff was paid a certain sum per week for a period of time and a certain other sum for the residue of the time to January 18, 1936. These payments were in part performance by the

defendant of its obligation. Full performance would have required the payment of $18.00 per week. As far as the act extended it is informative of the construction placed upon the contract by the parties to it.

It was said in the syllabus to the case of *Federal Surety Co. et al. v. A. Bentley & Sons Co.*, 51 F. (2d) 24, 78 A. L. R. 1041, 1042: "The practical construction of a contract by the parties themselves is entitled to great weight, and in the absence of other controlling considerations should prevail."

The defendant brings cross-error based upon the action of the court in retaining the case on the docket after its dismissal of the attachment because it had no further jurisdiction over the defendant, which is a nonresident.

This contention is baseless because the defendant appeared at the trial, made a motion to quash, lodged its demurrer to the petition and filed its grounds which embodied the outline of a full and complete defense.

There is nothing in the record to suggest that the defendant appeared specially for the purpose of making objections to any defects in the process or pleadings.

Burks' Pleading and Practice (3d Ed.), sec. 51, p. 107: "Undoubtedly there may be a special appearance for the purpose of making objections to defects, but granting or accepting a continuance, or a motion to quash for other reasons than defects in the process or return, amount to a general appearance. Of course pleading the general issue, demurring, or filing an affidavit of substantial defense amount to a general appearance. The execution, however, of an attachment bond by a defendant for the purpose of releasing the property attached does not amount to a general appearance." *New River Mineral Co. v. Painter*, 100 Va. 507, 42 S. E. 300; *Lane Bros. & Co. v. Bauserman*, 103 Va. 146, 48 S. E. 857, 106 Am. St. Rep. 872; *Bowles v. Bowles*, 141 Va. 35, 126 S. E. 49; *Board of Supervisors v. Proffit*, 129 Va. 9, 105 S. E. 666; *Sun Co. v. Burruss*, 139 Va. 279, 123 S. E. 347; *Hilton v. Consumers' Can Co.*, 103 Va. 255, 48 S. E. 899.

It follows that, in our opinion, the trial court erred in sustaining the demurrer on any alleged ground. We, therefore, reverse the judgment, and remand the case to the court from which it came for a trial on its merits and in accordance with the views herein expressed.

*Reversed and remanded.*