# CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

George E. Handley

   v.

Boy Scouts
of America et al.

## Case No. (Law) 16777-RF

BY JUDGE ROBERT P. FRANK

### October 16, 1992

Plaintiff, George Handley, filed his Amended Motion for Judgment on December 20, 1991, alleging that the Peninsula Council (PC) and the National Council of the Boy Scouts of America (BSA) breached the Plaintiff's employment contract as Scout Executive by discharging the Plaintiff without just cause. The Defendants claim that the employment agreement was not breached since the Plaintiff served at the satisfaction of PC, i.e., just cause was not a condition for termination. The Defendants filed a demurrer to the Plaintiff's amended Motion for Judgment.

A demurrer admits the truth of all material facts that are properly pleaded. Under this rule, the facts admitted are: "(1) facts expressly

alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged." *Ames v. American Nat'l Bank*, 163 Va. 1, 37, 176 S.E. 204, 215 (1934).

The court must now review the facts as pleaded admitting all material facts properly pleaded.

The Plaintiff began working as a Boy Scout executive in 1964 and has more than 25 years experience in the Boy Scout organization. Plaintiff steadily progressed through the ranks of the organization. (AMJ # 4.)

The position of Scout Executive is unique in the American corporate world. The BSA certifies individuals as Scouting Professionals and the Scouting Professionals are then eligible to fill available positions with local councils around the country. Local councils may hire as Scout Executives only those persons who have been certified by the national organization as Scouting Professionals and only under conditions and terms of employment set by the BSA, National Council. (AMJ # 5.)

The executive board of each local council hires the executive from an approved list provided by BSA, and the executive serves during the pleasure of the local council's executive board, subject to the policies and procedures of the National Council (Article 8, Section 5, Clause 4, Rules & Regulations of the BSA).

The executive board of each local council interviews eligible Scouting Professionals and decides which applicant will be hired by that council. (AMJ # 7.)

In order to promote uniformity and allow smooth transitions between councils, the BSA provides rules and guidelines for employment of Scouting Professionals. According to the BSA rules: "Each local council, as a condition of its charter, is required to conduct its employment of commissioned professionals within these constraints," which constitute terms and conditions of employment. (AMJ # 8.)

The BSA provides standard employment letters for local councils to use when a Scouting Professional is hired. The letters contain blank spaces for items such as salary and benefits which may be filled in by the local council, but in all other respects, the BSA requires councils to use the letters as written. (AMJ # 9.)

As Council Executive, Plaintiff was the Peninsula Council's chief professional officer with responsibility for managing the Council's professional and office staff and the direction of 3,500 volunteers.

Plaintiff had oversight authority for all council employees, the council's annual budget, financial planning, fund-raising campaigns, endowments, public relations, special events and other activities. (AMJ # 18.)

The PC offered employment to the Plaintiff, and the offer of employment was contained in a "letter of employment" dated March 17, 1986, which was completed and signed by the PC and the Plaintiff. (AMJ # 59.)

Plaintiff alleges the letter of employment explained essential terms of Plaintiff's employment and generally the duties of a Scout Executive. Although the letter did not fully conform to the standard letter of employment required by the BSA, the Plaintiff alleges that the terms and conditions of the Plaintiff's employment were promulgated by the National Council to the Plaintiff and Peninsula Council. (AMJ # 60.)

Plaintiff further alleges that as consideration for the Plaintiff's services and as an inducement for the Plaintiff to work for the Peninsula Council and on behalf of the BSA, the Defendants expressly promised that the BSA and/or the Peninsula Council would pay wages to the Plaintiff for his services. As additional consideration, Plaintiff alleges the BSA and the Peninsula Council promised the Plaintiff he would be terminated only for just cause. (AMJ # 64.)

Plaintiff maintains these promises constituted an offer of employment with just-cause job security as a part of the Plaintiff's compensation, which he earned along with his wages by beginning work. (AMJ # 65.)

The terms of said contract included those discussed above and were made orally and in written documents signed by the Defendants with the intent to adopt the writings as terms of the Plaintiff's employment agreement. (AMJ # 66.)

In essence, the Plaintiff alleges that in addition to the written and duly executed "letter of employment," the terms of the standard letter of employment, the Rules & Regulations of the BSA and unidentified contemporaneous oral promises, collectively comprise the employment agreement between the Plaintiff and PC.

The primary issue in the demurrer is whether the court can look beyond the specific language used in the "letter of employment" by considering oral promises and BSA Rules & Regulations.

The basic principles are stated in *Great Falls Hardware v. South Lakes Village Ctr.*, 238 Va. 123, 380 S.E.2d 642 (1989):

Where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning. *See Ross v. Craw*, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986); *cf., Southwest Va. Hosps. v. Lipps*, 193 Va. 191, 204, 68 S.E.2d 82, 90 (1951). In *Wilson v. Holyfield*, 227 Va. 184, 313 S.E.2d 396 (1984), we wrote as follows:

"It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares. *Id.* at 187, 313 S.E.2d at 398. We stated further in *Wilson* that 'courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein'." 227 Va. at 187, 313 S.E.2d at 398.

*Renner Plumbing v. Renner*, 225 Va. 508, 303 S.E.2d 894 (1983), states:

Parol evidence of prior or contemporaneous oral negotiations are generally inadmissible to alter, contradict, or explain the terms of a written instrument provided the document is complete, unambiguous, and unconditional. An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time. *Berry v. Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983). Accordingly, when the parties set out the terms of their agreement in a clear and explicit writing, the document is the sole memorial of the contract and the sole evidence of the agreement. *Durham v. Pool Equip. Co.*, 205 Va. 441, 446, 138 S.E.2d 55, 59 (1964). A well-recognized exception to the parol evidence rule, however, is the partial integration doctrine. "Where the entire agreement has not been reduced to writing, parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract

between the parties." *High Knob, Inc. v. Allen*, 205 Va. 503, 506, 138 S.E.2d 49, 52 (1964).

Another exception to the rule, which is similar in many respects to the partial integration doctrine, is the collateral contract doctrine. Under this doctrine, the parol evidence rule does not exclude parol proof of a prior or contemporaneous oral agreement that is independent of, collateral to and not inconsistent with the written contract and which would not ordinarily be expected to be embodied in the writing. *See High Knob, Inc. v. Allen*, 205 Va. 503, 138 S.E.2d 49 (1964).

The threshold question is whether the "letter of agreement" is clear and unambiguous or whether parol evidence is needed to clarify or supplement all or some of the contract terms.

The duly executed letter of employment is a complete, unambiguous, unconditional, valid and enforceable contract. There are no allegations of fraud, duress, or lack of consideration in that contract. Plaintiff's allegations of fraud in Count II of the Amended Motion for Judgment are not related to the validity of the contract. Indeed, Plaintiff pleads that it is an enforceable contract. The contract is completely integrated on its face. It addresses compensation, job responsibilities and description, time requirements, other benefits such as insurance, leased car, life insurance, vacation, and termination. Clearly, it is not silent as to termination.

The contract specifically sets forth the termination provisions:

> Your employment is based on the continued satisfaction of the Executive Board which may terminate your employment on thirty (30) days written notice if dissatisfied with your performance or if council staff needs or budgetary considerations warrant. At Executive Board option, or in the event you are decommissioned as a Professional Scouter, the 30-day notice may be waived by payment of one month's salary. In the event of termination, the board will advise you, in writing, of the reason(s). Any decisions in these regards are final. Termination may only be reviewed under the open door policy.
>
> You also have the right to terminate your own employment, at any time, on thirty (30) days written notice to the Council President.

The standard form letter of employment contains the following language dealing with termination:

Your employment is based on the continued satisfaction of the council executive board which may terminate your employment, with the concurrence of the National Council, on thirty (30) days written notice in the event that the council executive board and the National Council concur that just cause exists for your termination. In arriving at a determination of just cause for termination, the council executive board and the National Council must concur and shall follow the rules, regulations, and policies of the Boy Scouts of America as promulgated from time to time and the procedures provided therein. Subject to the above, at council executive board option, or in the event you are decommissioned as a professional Scouter, the 30-day notice may be waived by payment to you of no more than one month's salary. In the event of a termination, the board will advise you in writing of the reason(s). Terminations may only be reviewed under the BSA open door policy.

You also have the right to terminate your own employment at any time upon thirty (30) days written notice to the council president.

In comparing the executed "letter of employment" with the standard form, the PC followed the standard form with no deviation except for the termination provision. In comparing the termination provisions, both paragraphs are identical except that the executed agreement omits all reference to "just cause" and adds that the decision is final. The standard form directly contradicts the "letter of agreement."

The local Councils were directed by BSA to follow the standard form, but in the case at bar, the local council did not do so. The AMJ does not raise any estoppel issues, i.e., that the Defendants could be barred from arguing an "at will" employment since they "violated" their own Rules & Regulations.

As indicated earlier, the BSA Rules & Regulations specify that the executive serves at the pleasure of the local council subject to the policies and procedures of the BSA. It is obvious that one cannot both serve at the pleasure of the local council and only be terminated for just cause. The two concepts are mutually exclusive. It is also interesting to note that the standard form bases employment on the continued satisfaction of the local council but then requires that the local and national council concur that just cause exists. These two concepts also

appear to be mutually exclusive. For the reasons stated herein, these apparent inconsistencies are not material for this decision.

It could be argued, and was done so by the Defendants, that the standard form letter does not create a "just cause" employment. To read the apparent conflicting concepts so they are consistent, one could argue that the provision requiring the PC and the BSA to concur on just cause is simply a check and balance system whereby both entities must agree to the basis of the termination. Thereby, the local council cannot discharge or decertify a scout executive without the concurrence of the National Council. Clearly, the National Council has an interest in not depleting its list of certified scout executives. Under such a theory, the "just cause" requirement does not inure to the benefit of the scout executive. Plaintiff was not a third party beneficiary under those provisions.

A person who is not a party to a contract can sue for breach thereof:

> only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee. *Valley Landscape Co., Inc. v. Rolland*, 218 Va. 257, 262, 237 S.E.2d 120 (1977) (citations omitted).

The requirements for qualification as an "intended," as opposed to an "incidental," beneficiary are stringent. It is not enough that a person would merely have received a benefit from the performance of the contract or that he is injured by a breach thereof:

> the provision sought to be invoked must have been inserted in the contract *directly* or *primarily for his benefit*; or to state the rule differently, one not a party to a contract and who would be only indirectly or incidentally benefitted by its performance cannot recover for a breach thereof. *Id.* at 262 (emphasis added).

Thus, in *Valley Landscape Co., Inc.*, the Virginia Supreme Court sustained the Defendant's demurrer, holding that a contractor's incidental benefit from the proper performance of an architect's contractual duties was not sufficient to conclude that the agreement was "clearly and definitely intended" to bestow a direct benefit on the contractor. *Id.* at 262–63.

The Plaintiff's theory of the case is that the BSA Rules & Regulations were incorporated in the employment agreement when the Plaintiff was hired. Clearly, they were not incorporated by reference. There is no such reference in the executed letter of agreement. The question then is whether the Rules & Regulations, standard form, etc., became an indirect unilateral contract.

The gist of the Plaintiff's breach of contract claim is that the policy in the BSA's Rules & Regulations created a contract under which he could not be fired at will, but rather only for cause.

There are a number of cases that hold policies set forth in employment handbooks or elsewhere can become enforceable terms of an employment under certain conditions. *Woolley v. Hoffman-LaRoche, Inc.*, 491 A.2d 1257 (N.J. 1985) (job security); *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880 (Mich. 1980) (job security); *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081 (Wash. 1984) (job security). A number of Federal courts applying Virginia law have made similar holdings. *Thompson v. Kings Entertainment Co.*, 653 F. Supp. 871 (E.D. Va. 1987) (job security); *Thompson v. American Motor Inns, Inc.*, 623 F. Supp. 409 (W.D. Va. 1985) (job security); *Frazier v. Colonial Williamsburg Foundation*, 574 F. Supp. 318 (E.D. Va. 1983) (job security); *Sullivan v. Snap-On Tools Corp.*, 708 F. Supp. 750 (E.D. Va. 1989) (job security). *Bradley v. Colonial Mental Health & Retardation Servc. Bd.*, 856 F.2d 703 (4th Cir. 1988).

The Virginia Supreme Court, on many occasions, has ruled that at will employment agreements may be modified or converted into "just cause" agreements by agreement or intent of the parties. *Norfolk Southern Ry. v. Harris*, 190 Va. 966, 59 S.E.2d 110 (1950); *Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, 194 S.E. 727 (1938); *Twohy v. Harris*, 194 Va. 69, 72 S.E.2d 329 (1952); *Miller v. SEVAMP*, 234 Va. 462, 362 S.E.2d 915 (1987); *Hercules Powder Co. v. Brookfield*, 189 Va. 531, 53 S.E.2d 804 (1949); *Dulaney Foods, Inc. v. Ayers*, 220 Va. 502, 260 S.E.2d 196 (1979).

None of these cases are factually similar to the case at bar. In each case where manuals, memoranda or oral promises were held to create a contractual right, they contradicted the express language of a written contract of employment. Indeed, the cases dealt with whether employments at will (where no mention was made of the duration of employment) became a "just cause" employment agreement because of the manual, handbook, oral promises, etc.

These cases, when considered together, reaffirm the traditional rules of contractual interpretation in an employment context. In those instances where the courts found an express or implied contract of "just cause" termination, the court found an offer, acceptance and consideration.

Unlike the cases cited above, the letter of employment in the case at bar was not silent as to the basis for termination. Indeed, it specified that the Plaintiff served at the satisfaction of the local council. The only qualifying provision was a thirty-day notice period. It did not establish an objective standard such as "just cause" which would be subject to judicial review. As to termination, the agreement was not obscure, equivocal or susceptible to more than one interpretation.

The Plaintiff was a 25-year veteran of the Boy Scouts. One could safely assume he has negotiated many employment contracts. The Plaintiff was hired for a responsible position. It is apparent Plaintiff and PC negotiated the employment agreement and, for whatever reason, chose "at will" employment rather than a "just cause" basis. This view is substantiated by the fact that the parties followed the provisions of the standard form letter of employment almost verbatim, except for the termination criteria. Plaintiff bargained away a "just cause" employment.

The Plaintiff now wants this court to rewrite the plain and unambiguous language of a valid binding contract. The Plaintiff urges this court to incorporate the inconsistent provisions of the BSA Rules & Regulations to contradict the written employment agreement. This court declines that invitation. "There is no public policy reason for this court to make a contract for the parties which they did not make for themselves." *Cone v. Lewis-Gale Hosp., Inc.*, 12 Va. Cir. 132 (1988).

It should further be noted that the "letter of employment" expressly prohibits any modification of the contract except by written agreement signed by the Plaintiff and PC. The Plaintiff does not allege that an "at will" employment agreement was subsequently modified to become a "just cause" agreement. He maintains the agreement was on a "just cause" basis from the beginning.

In summary, this court finds that the letter of employment exhibited herein is in fact the contract of employment, which allows the PC to discharge the Plaintiff for whatever reason it chooses, subject only to a thirty-day notice.

A pleading seeking to recover damages for the termination of a contract of employment, the terms of which give rise to no fair inference of a specific period for its intended duration, and which is not supported by any substantial additional consideration taking it out of the category of an employment at will, is demurrable. *Plaskitt v. Black Diamond Trailer Co.*, 209 Va. 460, 164 S.E.2d 645 (1968).

This court thereby sustains the demurrer to Count I, Breach of Contract and dismisses that count.

This court sustains the Defendants' demurrer to Count II, fraud, because the allegations are too vague, indefinite and conclusory to state a cause of action. *See, Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 241 S.E.2d 778 (1978).

> But these allegations lack a specificity required to make out a case of fraud. The identities of the agents, officers, and employees of [the defendant] who are alleged to have perpetrated the fraud are not revealed, or the details of the time and place where the fraudulent acts occurred. The allegations are too vague, indefinite, and conclusory to state a cause of action. 218 Va. at 858.

For similar reasons, Plaintiff's allegations must fail here as well. Although he alleges that certain "agents, supervisors, servants and employees" of Defendants represented that his employment could be terminated only for just cause, he does not identify the individuals responsible for the so-called representations, nor does he provide any details as to the time and place these "fraudulent" acts supposedly occurred.

The court does, however, grant the Plaintiff leave to replead Count II if he so chooses.

Plaintiff maintains that the PC and BSA entered into an employment contract with the Plaintiff (AMJ # 66) and that consideration flowed between the Plaintiff and both PC and BSA (AMJ # 67 & 68). Plaintiff further alleges the PC and BSA breached their contract with Plaintiff (AMJ # 69 & 70).

To the extent that Plaintiff alleges the employment contract was between the Plaintiff, PC and BSA, the Defendant's demurrer to Count III is sustained for the reasons given below.

The elements required for a prima facie showing of the tort are: (1) the existence of a valid contractual relationship or business expect-

ancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985).

While an action in tort for intentional interference with contract will lie against a party to the contract, *Worrie v. Boze*, 198 Va. 533, 540, 95 S.E.2d 192, 198 (1956), the conspiracy must be with an independent third party outside the contract. *See, Elliott v. Shore Stop, Inc.*, 238 Va. 237, 384 S.E.2d 752 (1989).

> We agree with this reasoning in *Motley, Green & Co. v. Detroit Steel & Spring Co.*, 161 F. 389 (C.C. S.D. N.Y. 1908). "If it be an actionable wrong for a third person to interfere in a contract and induce one of the parties thereto to break it to the injury of the other, can it be said it is not equally a wrong for one of the parties to the contract to invite a third party to unite with him and aid him in breaking the contract in such a way as possibly to escape liability in an action for nonperformance and, gaining his consent, to act together in consummating their agreement?" 198 Va. at 541.

In order to have an actionable tort, a person not a party to the contract must take part in the conspiracy. *Stauffer v. Fredericksburg Ramada, Inc.*, 411 F. Supp. 1136 (E.D. Va. 1976).

In reviewing the various Virginia cases dealing with this tort, every case has involved the conspiracy of an independent third party.

In the instant case, the allegations show that both defendants were parties to the employment contract. As a matter of law, Count III fails to state a cause of action.

In AMJ # 77, Plaintiff alleges that PC is the sole employer. If the Plaintiff maintains that the employment contract was only between the Plaintiff and PC, Count III would state a cause of action for tortious interference of contract rights, if properly pleaded. Since Count III does not plead facts, but only conclusions, the demurrer will be sustained, with leave for the Plaintiff to replead Count III.

In their demurrer, the Defendants also raise the question of whether this tort would lie for an "at will" employment contract.

While there are no Virginia cases on point, the overwhelming majority of cases have held that a valid claim exists for interference with

a "terminable at will" employment contract because it is a subsisting relation, of value to the Plaintiff, and presumably to continue in effect until it is terminated. W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 129 at 995, 996 (4th ed. 1971). In *Canuel v. Oskoian*, 184 F. Supp. 70 (D. R.I. 1960), the court noted that a terminable at will employment contract is not valueless and that the law protects an employee from "unwarranted and unprivileged interference by third persons with the advantageous relationship which he enjoys." *Canuel*, 184 F. Supp. at 75. The court cited *Truax v. Raich*, 239 U.S. 33, 36 S. Ct. 7 (1915), in which Justice Hughes declares that:

> [t]he fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion, and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will. (Emphasis added.) *Truax*, 239 U.S. at 38, 36 S. Ct. at 9.

In the instant case, this court finds that an independent third party may interfere with an "at will" employment contract. This court, therefore, overrules that part of the Defendants' demurrer.

The court further grants the Defendants' Motion for Profert and Oyer. The "letter of employment," standard form letter of employment and the applicable Rules & Regulations of the BSA shall be incorporated by reference into the Amended Motion for Judgment. It should be noted that the parties have included these documents as exhibits in their Memoranda.

Because of the court's ruling, there is no need to address the Defendants' Special Plea of Statute of Frauds. The court reserves any ruling on the Special Plea of Workers' Compensation and Statute of Limitations. Counsel did not brief the Workers' Compenstion issue, nor did they address the statute of limitations for fraud, although it would appear that Virginia Code § 8.01–243(A) establishes a two-year statute of limitations from when the cause of action arose (see also § 8.01–249(1)).

I will rule on the statute of limitations for Count III if the Plaintiff amends that Count.

December 2, 1993

I. Plaintiff, George Handley, filed his second amended Motion for Judgment on February 5, 1993, alleging that the Peninsula Council (PC) breached the Plaintiff's employment contract as Scout Executive by discharging the Plaintiff without just cause. PC claims that the employment agreement was not breached since the Plaintiff served at the satisfaction of PC, i.e., just cause was not a condition for termination. The Defendants filed a demurrer to the Plaintiff's second amended Motion for Judgment.

A demurrer admits the truth of all material facts that are properly pleaded. Under this rule, the facts admitted are: "(1) facts expressly alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged." *Ames v. American Nat'l Bank*, 163 Va. 1, 37, 176 S.E. 204, 215 (1934).

The court must now review the facts as pleaded, admitting all material facts properly pleaded.

The Plaintiff was hired by PC in March of 1986. In September of 1988, PC and the Plaintiff entered into a written contract which contained the following paragraph addressing termination:

> Your employment is based on the continued satisfaction of the council executive board which may terminate your employment, with the concurrence of the National Council, on thirty (30) days written notice in the event that the council executive board and the National Council concur that just cause exists for your termination. In arriving at a determination of just cause for termination, the council executive board and the National Council must concur and shall follow the rules, regulations, and policies of the Boy Scouts of America as promulgated from time to time, and the procedures provided therein. Subject to the above, at council board option, or in the event you are decommissioned as a professional Scouter, the 30-day notice may be waived by payment to you of no more than one month's salary. In the event of a termination, the board will advise you in writing of the reason(s). Terminations may be reviewed under the BSA open door policy.

> You also have the right to terminate your own employment at any time upon thirty (30) days written notice to the council president.

The BSA Rules and Regulations specify that the executive serves at the pleasure of the local council subject to the policies and procedures of the BSA.

Whether or not the demurrer should be granted can be determined on the four corners of the employment contract.

Virginia applies the common-law rule that an employment contract is presumed to be one terminable at will, upon reasonable notice, unless the period of its intended duration can be fairly inferred from its provisions. *Bowman v. State Bank*, 229 Va. 534, 535, 331 S.E.2d 797, 798 (1985). However, if an employment contract is terminable only for cause, it is one for a fixed period. *Progress Printing Co. v. Nichols*, 244 Va. 337, 341, 421 S.E.2d 428, 430 (1992). In Virginia, as in a majority of jurisdictions, the employment relationship is presumed to be "at will," which means that the employment term extends for an indefinite period and may be terminated for any reason upon reasonable notice. *Miller v. SEVAMP, Inc.*, 234 Va. 462, 465, 362 S.E.2d 915, 916–17 (1987); *Stonega Coal and Coke Co. v. Louisville and Nashville R.R. Co.*, 106 Va. 223, 55 S.E. 551 (1906). This presumption may be rebutted, however, if sufficient evidence is produced to show that the employment is for a definite, rather than an indefinite, term. *Norfolk Southern Ry. Co. v. Harris*, 190 Va. 966, 976, 59 S.E.2d 110, 114 (1950).

The critical issue in either case is whether the employer's promise of continued employment is unambiguous. Thus, in *Addison v. Amalgamated Clothing and Textile Workers Union of America*, 236 Va. 233, 372 S.E.2d 403 (1988), the employee alleged that his employer had agreed he could keep his job "as long as he wanted one and as long as one existed." The court found this promise too indefinite to rebut the at-will presumption.

Similarly, the Plaintiff in *Miller v. SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915 (1987), asserted she had been promised employment with a non-profit agency as long as "adequate federal funding was available." This understanding was too vague to constitute a fixed term employment contract or a promise not to fire without cause. Because "the employer's statement bespoke indefiniteness," the Plaintiff had failed to rebut the at-will presumption.

However, where the evidence concerning the terms of a contract of employment is in conflict, the question whether the employment is at-will or for a definite term becomes one of fact for resolution by a jury. *Buchanan & Son*, 148 Va. at 771, 139 S.E. at 485, *Conrad*, 120 Va. at 465, 91 S.E. at 765.

Nevertheless, a pleading seeking to recover damages for the termination of a contract of employment, the terms of which give rise to no fair inference of a specific period for its intended duration and which is not supported by any substantial additional consideration taking it out of the category of an employment at will, is demurrable. *Plaskitt v. Black Diamond Trailer Co.*, 209 Va. 460, 164 S.E.2d 645 (1968).

In *Buchanan*, 148 Va. at 771, the court quoted:

> In *Conrad v. Ellison-Harvey Co.*, 120 Va. 458, 91 S.E. 763, Ann. Cas, 1918B, 1171 (1917), Judge Kelly quotes with approval from the opinion of the court in *Tatterson v. Suffolk Mfg. Co.*, 106 Mass. 56, as follows:
>
> "There was no express stipulation, either written or oral, which fixed the time for the continuance of the employment of the plaintiff by the defendant. That element of their contract depended upon the understanding and intent of the parties, which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact to be drawn only by the jury. The whole question, what was the contract existing between the parties at the time the defendants undertook to terminate the employment, was properly submitted to the jury."

However far apart the authorities may be as to what constitutes a hiring for a definite period and what constitutes a hiring at will, terminable at any time, in the absence of precise and definite terms controlling the meaning of the contract, there is unanimity of agreement that where the evidence is conflicting, the question is one for determination by the jury. *Hoffman Co. v. Pelouze*, 158 Va. 586, 594, 164 S.E. 397, 399 (1932).

The issue then is whether the terms of the written employment agreement give rise to a fair inference of an intent for a "just cause" termination.

At first blush, it would appear that the "satisfaction" and "just cause" language of the employment agreement are irreconcilable concepts. However, we must first look at our Supreme Court's interpretation of "satisfaction" employment contracts.

In *Forsberg v. Zehm*, 150 Va. 756, 143 S.E. 284 (1928), a church hired Zehm as the musical director, and for the satisfactory performance of his job, he would receive $100.00 per month.

The issue was whether Zehm satisfactorily performed his duties. The church argued since it was employment at will, they could discharge him for any reasons, i.e., that Zehm served at the personal convenience of the church.

The Supreme Court disagreed with the church and established an objective standard for Zehm's termination.

> Considering these contractual terms together, and giving full recognition to the requirement of "satisfactory performance," but reaching a conclusion as to the intent of the parties in the light of the circumstances, of the purpose had in mind, and the character of services to be rendered by Zehm, both as organist and as choir director and master, it becomes obvious that the congregation were entitled to have Zehm perform his part of the contract in such manner as to be fairly and reasonably satisfactory to them and the persons attending the services of the church.

*Id.* at 769.

The *Forsberg* court acknowledged that in certain types of personal contracts, a more subjective standard may apply. Referring to *Carpenter v. Virginia-Carolina Chemical Co.*, 98 Va. 177, 180, 35 S.E. 358, 359 (1900), *Zehm* stated:

> The court there is also recognized that, where the contract was to "gratify taste, serve personal convenience, or satisfy individual preference," then the party for whom the work is done may determine for himself whether it shall be accepted. The contract in the instant case does not fall within that latter class. *Id.* at 769.

*Forsberg* ultimately held that whether or not Zehm's continued engagement would constitute satisfactory performance was a jury question.

This is not simply a case in which an employer, whose personal satisfaction is made the test, may declare the services unsatisfactory at his will, provided he acts honestly and not in bad faith. The possible rendering of the services not satisfactory here, within the intendment of the parties, must necessarily arise if at all out of circumstances and conditions not dependent upon the will nor uncontrolled judgment of the employer, but dependent upon collateral circumstances and facts such as would justify a reasonable man in the judgment that the continued services would no longer be satisfactory. The test of these circumstances appearing in the evidence must be that they reasonably uphold the conclusion of the unfitness of the employee. *Id.* at 770–71.

The relations of the contracting parties to each other, the real object of the contract, and the character of the services to be rendered, or the use to which articles sold is to be put, and all other circumstances must be considered in determining the rights of the parties. *Forsberg, supra* at 772.

In *Norfolk & Southern Ry. Co. v. Harris*, 190 Va. 966, 59 S.E.2d 110 (1950), the employee and employer clearly had a "just cause" contract. In discussing whether or not employers could arbitrarily dismiss an employee, the court cited, with approval, a California case:

> In *Seifert v. Arnold Bros.*, 138 Cal. App. 324, 31 P.2d 1059, the employment was "to be steady as long as your services are satisfactory." It was held that "the contract was subject to termination on the happening of a contingency, that is, the contingency of dissatisfaction, and the courts and text-writers have held such to be for a definite length of time.

*Id.* at 977.

It is interesting to note that the *Norfolk Southern* case also addressed the issue of mutuality in a contract. The ability of the employee to resign on proper notice does not convert a "just cause" contract to an "at will" one.

> The defendant's agreement that it would not discharge plaintiff without just cause was a thing of value to him, a safeguard against the loss and embarrassment to be expected from an arbitrary discharge. The defendant's agreement that it would not be done was a term of plaintiff's employment, compensation for his work which he had earned along with his wages. The defendant ought not to take that promised reward from

him without incurring a penalty for violating its agreement. It was a promise in return for services which the plaintiff performed and which furnished sufficient consideration for a binding contract. In such case, the doctrine of mutuality is inapplicable. 12 Am. Jur., *Contracts*, § 14, p. 512. *Cf., Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, 585, 194 S.E. 727, 731, 114 A.L.R. 1291.

In *Kirkley v. Roberts Co.*, 268 Mass. 246, 167 N.E. 289, the plaintiff was employed as a sales agent "as long as he shall faithfully and diligently perform the duties of his employment." There was no promise on the agent's part to remain with the company for any definite time. The court said: "This does not invalidate the contract, nor, of itself, make it terminable at the will of the company," and that the contract was binding upon the company "so long as the agent faithfully and diligently performs and is willing and able to perform the prescribed duties at the compensation fixed." 167 N.E. at 290.

*Id.* at 976, 977.

In the instant case, it is clear that this employment contract was not to "gratify taste, serve personal convenience or satisfy individual preference." Therefore, some objective, good faith standard would be required.

It is this court's opinion that the breach of contract count is not demurrable since the terms of the contract give rise to a fair inference of a "just cause" contract. The court therefore denies the defendant's demurrer as to Count I, Breach of Contract, i.e., paragraphs 1, 2, 3 and 7 of its Demurrer.

II. Defendant filed a Special Plea of Statute of Frauds. While pleading that the employment agreement consisted of oral and written documents (second Amended Motion for Judgment), the Plaintiff conceded in argument that the written letter agreement constituted the agreement between the parties. Therefore, this court dismisses the defendant's Special Plea since the agreement relied upon by the Plaintiff is in writing and complies with the Statute of Frauds.

III. In paragraph 9 of its Demurrer, Defendant argues that the Plaintiff failed to allege facts or necessary elements to support an action for tortious interference of its employment contract with PC. Alternatively, Defendant demurs to this Count III since the Defendants cannot inter-

fere with its own contract. This argument was well founded until the Plaintiff filed its second Amended Motion for Judgment which alleges the employment contract was between the Plaintiff and PC. BSA was not alleged to be a party to the contract.

The elements required for a prima facie showing of the tort are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985).

While an action in tort for intentional interference with contract will be against a party to the contract, *Worrie v. Boze*, 198 Va. 533, 540, 95 S.E.2d 192, 198 (1956), the conspiracy must be with an independent third party outside the contract. *See, Elliott v. Shore Stop, Inc.*, 238 Va. 237, 384 S.E.2d 752 (1989).

> We agree with this reasoning in *Motley, Green & Co. v. Detroit Steel & Spring Co.*, 161 F. 389 (S.D. N.Y. 1908). "If it be an actionable wrong for a third person to interfere in a contract and induce one of the parties thereto to break it to the injury of the other, can it be said it is not equally a wrong for one of the parties to the contract to invite a third party to unite with him and aid him in breaking the contract in such a way as possibly to escape liability in an action for nonperformance and, gaining his consent, to act together in consummating their agreement?" 198 Va. at 541.

In order to have an actionable tort, a person not a party to the contract must take part in the conspiracy. *Stauffer v. Fredericksburg Ramada, Inc.*, 411 F. Supp. 1136 (E.D. Va. 1976).

In this court's opinion of October 16, 1992, this court stated:

> If the Plaintiff maintains that the employment contract was only between the Plaintiff and PC, Count III would state a cause of action for tortious interference of contract rights, if properly pleaded.

The Plaintiff properly pleaded Count III as to the elements of the action.

The Defendants further demurred, arguing that there can be no tortious inference with an "at will" contract. This court has already ruled on that point in its opinion of October 16, 1992.

This court therefore overrules paragraph 9 of the Defendants' Demurrer.

IV. Defendant filed a Special Plea of Limitations to Plaintiff's Count III, tortious interference with contractual rights. The alleged tort occurred no later than September 25, 1990, and the amended Motion for Judgment alleging Count III was filed December 20, 1991. If the one year "catch all" limitation of § 8.01–248 applies, the Plaintiff is time barred. However, if the five-year statute of limitations of § 8.01–243(B) applies, the cause is not time barred.

The decision turns on whether the injury is to the Plaintiff's "property" or to his "person."

*Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192 (1956), affirmed a judgment granting relief for a tortious conspiracy to produce a breach of contract. There, the court ruled:

> It is well settled that the right to performance of a contract and the right to reap profits therefrom are property rights which are entitled to protection in the courts. Consequently, suits for procuring breach of contract proceed on this basis. 15 C.J.S., *Conspiracy*, § 13, pp. 1020, 1021; Annotation, 84 A.L.R. 46.
>
> The plaintiffs' claim here is of this nature. Their claim is that their business or estate, their property in their contract with Worrie, was destroyed by reason of the acts of the defendants done in pursuance of their conspiracy. Moreover, they allege that pursuant to their conspiracy, the defendants solicited the plaintiffs' customers and thus deprived the plaintiffs of some of their business. Clearly, under these allegations, the wrong done and damage done are directed to the estate or property of the plaintiffs and not to them personally.

*Id.* at 536 and 537.

*Worrie* addressed § 8–24 which distinguished between the survivability and non-survivability of the cause of action. "Survivability" required injury to the property of the claimant, § 64.1–145, not to his person.

The statute was amended in 1977 eliminating survivability as the criterion for the one or five year limitation, yet the underlying criteria,

i.e., property versus personal rights remained. Furthermore, the amendment to § 64.1–145 eliminated the distinction between direct or indirect (consequential) injury. See *Piggot v. Moran*, 231 Va. 76, 341 S.E.2d 179 (1986).

Therefore, the *Worrie* analysis would not be rendered moot by the 1977 amendment to the limitation statutes. The analysis remains the same.

Furthermore, the Supreme Court of Virginia has affirmed its statute of limitations ruling in several cases decided subsequent to the 1977 amendment.

*Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985), the first case to define the elements of tortious interference with a contract, cites *Worrie* with approval as to the right of performance of a contract as a property right. After setting forth the elements of the action, the court stated:

> The tort complained of here is an intentional wrong to the property rights of another, accomplished by words, not defamatory in themselves, but employed in pursuance of a scheme designed wrongfully to enrich the speaker at the expense of the victim.

*Worrie's* position on property rights was also cited with approval in *Lavery v. Automation Management Consultants, Inc.*, 234 Va. 145, 360 S.E.2d 336 (1987) (unauthorized use of Plaintiff's name for trade purposes), and *Duggins v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 836 (1987) (tortious interference).

While the *Worrie* case involved conspiracy to induce a breach of contract and the instant case involves tortious interference, the distinction is of no consequence to an analysis of the statute of limitation. In each cause of action, under the allegations of this case, two or more persons conspired to terminate the Plaintiff's contract and damage resulted. The allegations in the Plaintiff's second amended Motion for Judgment would satisfy the elements of tortious interference under *Chaves v. Johnson* or *Worrie v. Boze*.

The defendant cites two circuit court cases that cite no authority nor address *Worrie* but establish a one-year statute of limitations.

Defendant further cites several Federal cases which purportedly applies Virginia law. *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522 (4th Cir. 1987), involved a fraud, breach of contract, and

interference with contract actions. A real estate developer sued the defendant lender who failed to loan the Plaintiff money, under a loan commitment, to purchase and develop real estate. That court found the statute of limitations to be one year since there were no allegations the property to be acquired was damaged. The court did not address *Worrie* nor the Plaintiff's property rights in the loan commitment.

*Guiden v. Southeastern Public Service Auth. of Va.*, 760 F. Supp. 1171 (E.D. Va. 1991), ruled that the one-year statute of limitations applied to the tort of wrongful discharge. Yet it cited no Virginia cases nor addressed *Worrie.*

The same district ruled that the one-year statute of limitations applies to tortious interference. However, the reasoning of that court is badly flawed. In *Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121 (E.D. Va. 1991), the court said that reliance to any case decided prior to the 1977 statutory changes are misplaced. To the contrary, as previously indicated, the 1977 amendments did not change the criteria for determining which statute applied. In arriving at its decision, the *Unlimited* court still maintained the distinction between direct and consequential injury to property which was eliminated in the 1977 amendment to § 64.1–145.

A bankruptcy case, *Welch v. Kennedy Piggly Wiggly Stores, Inc.*, 63 B.R. 888 (W.D. Va. 1986), found a five-year statute of limitations for tortious interference with prospective economic opportunity.

This court therefore finds, consistent with *Worrie v. Boze, supra,* that the applicable statute of limitations for a tortious interference action is five years. Therefore, the court denies the Defendants' Plea of Statute of Limitations. However, to the extent that the Plaintiff has alleged damage to his reputation and diminished opportunity for other employment, both personal damages, the Plea will be sustained to those elements of damage.

V. Defendants demurred to the sufficiency of the Plaintiff's pleading as to Count II, fraud, asserting that the allegations of fraud are too vague, indefinite, and conclusory to state a cause of action.

See *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 241 S.E.2d 778 (1978).

> But these allegations lack a specificity required to make out a case of fraud. The identities of the agents, officers and employees of [the defendant] who are alleged to have perpetrated

the fraud are not revealed, or the details of the time and place where the fraudulent acts occurred. The allegations are too vague, indefinite and conclusory to state a cause of action. 218 Va. at 858.

This court previously sustained the Defendants' demurrer as to this count and allowed the Defendant to replead. The second amended Motion for Judgment does not substantially differ from the amended Motion for Judgment which this court sustained the Demurrer. This court, however, must re-evaluate its earlier ruling.

Plaintiff alleges that the Defendants, by and through unnamed agents, supervisors, etc., represented to the Plaintiff that he could remain in his employment until just cause arose; that despite the 1988 letter of employment that mentioned "just cause" limitation, it did not intend to provide the Plaintiff with "just cause" job security, or to honor their commitments. It is alleged those promises were false and made with the intention to induce the Plaintiff to rely on them, which the Defendant did to his detriment.

The Plaintiff further alleges the Defendants secretly decided to withhold from the Plaintiff these promised protections with the expectation that the Plaintiff would continue to rely on the same.

Further, BSA allowed the Plaintiff to be placed on probation in 1990 with the promise that fulfilling the terms of probation would allow the Plaintiff's continued employment. Yet the Defendants did not intend to allow the Plaintiff to complete probation and terminated the Plaintiff despite his compliance with the terms of probation.

*Elliott v. Shore Stop, Inc.*, 238 Va. 237, 239–40, S.E.2d 752, 753 (1989), provides a succinct statement as to the elements of fraud:

> The elements of actual fraud, to be proved by clear and convincing evidence are: a false representation of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage to the misled party. *Winn v. Aleda Construction Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984).
>
> Ordinarily, in an action based on fraud, the moving party must aver the misrepresentation of present or pre-existing facts: the action usually may not be predicated on unfulfilled promises or statements about future events. *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 351, 297 S.E.2d 647, 651 (1982).

However; there is a recognized exception to that rule. An action in tort for fraud and deceit may be predicated in some cases on promises made with a present intention not to perform them: the gist of the fraud in such a situation is the fraudulent intent. *Id.*, 297 S.E.2d at 651. *Accord, Boykin v. Hermitage Realty*, 234 Va. 26,.29, 360 S.E.2d 177, 178–79 (1987); *Colonial Ford v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985). This is such a case. The Plaintiff has alleged that Myers promised to permit the Plaintiff to retain her job if she took the test, a promise that he did not intend to perform at the time it was made. Thus, contrary to the trial court's view, Myers' promise was a misrepresentation of a present fact and, if made to induce the employee to act to her detriment, is actionable as an actual fraud.

*Id.* at 244, 245.

The allegations are not detailed as to names, places, and times but do, with little detail, plead a cause of action, yet the Supreme Court has recently addressed this issue.

When a motion for judgment or a bill of complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer. *Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918). And, even though a motion for judgment or a bill of complaint may be imperfect, when it is drafted so that defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer; if a defendant desires more definite information, or a more specific statement of the grounds of the claim, the defendant should request the court to order the plaintiff to file a bill of particulars. *Alexander v. Kuykendall*, 192 Va. 8, 14–15, 63 S.E.2d 746, 749–50 (1951).

*Catercorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993).

*Catercorp* and *Tuscarora* are not inconsistent. *Tuscarora* is fact specific in that the Plaintiff alleged actual or constructive fraud by the Defendant bank in making an advance under the construction deed of trust which it knew would not be used for "construction purposes." The court ruled that even if the Plaintiff had been informed by the

Defendant bank that the advance was not for construction, the subordination of the Plaintiff's first deed of trust to the construction loan still would have occurred. The fraud alleged would not have been material.

It is this court's view that there were sufficient material facts pleaded to inform the Defendant of the nature and character of the claim.

The court therefore overrules the Defendants' Demurrer as to Count II, fraud.

VI. The Defendants filed a Special Plea of Workers' Compensation, claiming that the Act is the exclusive remedy for the Plaintiff's injuries. The Defendants' position is unfounded.

The analysis should focus on the type and nature of the injury claimed and not on the species of tort. The Act is concerned with compensating for the loss caused by the injury. *Snead v. Harbaugh,* 241 Va. 524, 404 S.E.2d 53 (1991).

The Act embodies the concept of an injury to an employee's person. *Snead v. Harbaugh, supra.*

> In our opinion, a fair reading of the Act and its purposes treats the term "injury" as either a mental or a physical condition, affecting the employee's person. While we must construe this remedial act broadly to afford coverage for the employee, we are constrained by the Act itself and its intent. *Baggett & Meador Cos. v. Dillon,* 219 Va. 633, 637, 248 S.E.2d 819, 822 (1979). Consistent with this understanding of the Act, we have recognized that an "injury" occurs when "a lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." *Burlington Mills,* 177 Va. at 209, 13 S.E.2d at 293. A condition causing disability or pain will not be considered an "injury" for purposes of the Act unless accompanied by a "sudden obvious mechanical or structural change" in the body. *VEPCO v. Cogbill,* 223 Va. 354, 356, 288 S.E.2d 485, 486 (1982).

*Id.* at 527, 528.

*Snead* further holds that injury to reputation does not fall within the application of "injury" under the act.

In the present case, the Plaintiff does not plead any injury to his mental or physical condition affecting his person. Rather, he pleads loss of income, damage to his reputation, diminished opportunity for other employment, and loss of benefits.

The Plaintiff would be precluded from seeking damage to his person. The Plaintiff indicated in his brief that he is seeking no such damages.

The court therefore overrules the Defendants' Special Plea of Workers' Compensation.

VII. The Defendant asserted in his brief that ERISA pre-empts the Plaintiff's claim of lost employment benefits. Since this issue was not raised in the Demurrer or in any Special Plea, the court cannot address that issue.

VIII. Defendants' Plea of Statute of Limitations to Count II fraud, is overruled. § 8.01–245(A) establishes a two-year statute of limitations for fraud. Under § 8.01–249, a fraud cause of action accrues when the act is discovered or by the exercise of due diligence reasonably should have been discovered.

In the instant case, the cause of action accrued on the date of termination, September 25, 1990. The amended Motion for Judgment was filed on December 20, 1991, which alleged a fraud count. The fraud count was not barred by the statute of limitations.

IX. The defendant, by Demurrer, seeks to strike the Plaintiff's breach of contract claim for damage to reputation, diminished opportunity for other employment and past and future benefits. They argue that these damages do not arise naturally from the alleged breach, nor were reasonably contemplated by the parties.

The measure of damages is the actual loss or damage sustained on account of the breach. *Paddock v. Mason*, 187 Va. 809, 48 S.E.2d 199 (1948). Direct damages are those which naturally or ordinarily flow from the breach. They are damages which in the ordinary course of human experience can be expected to result from a breach. *Roanoke Hospital v. Doyle & Russell*, 215 Va. 796, 214 S.E.2d 155 (1975).

The question then is whether the Defendants would expect the Plaintiff to suffer damage to his reputation, lost benefits, and a diminished opportunity for other employment upon a breach of the contract.

We must first review the pleadings.

The Plaintiff began working as a Boy Scout executive in 1964 and has more than 25 years' experience in the Boy Scout organization. Plaintiff steadily progressed through the ranks of the organization. (2AMJ # 4).

The position of Scout Executive is unique in the American corporate world. The BSA certifies individuals as Scouting Professionals, and the Scouting Professionals are then eligible to fill available positions with local councils around the country. Local councils may hire as Scout Executives only those persons who have been certified by the national organization as Scouting Professionals and only under conditions and terms of employment set by the BSA, National Council. (2AMJ # 5).

The executive board of each local council hires the executive from an approved list provided by BSA.

The executive board of each local council interviews eligible Scouting Professionals and decides which applicant will be hired by that council. (2AMJ # 7).

In order to promote uniformity and allow smooth transitions between councils, the BSA provides rules and guidelines for employment of Scouting Professionals. According to the BSA rules: "Each local council, as a condition of its character, is required to conduct its employment of commissioned professionals within these constraints," which constitute terms and conditions of employment. (2AMJ # 8).

As Scout Executive, Plaintiff was the Peninsula Council's chief professional officer with responsibility for managing the Council's professional and office staff and the direction of volunteers. Plaintiff had oversight authority for all council employees, the council's annual budget, financial planning, fund-raising campaigns, endowments, public relations, special events, and virtually all other activities. (2AMJ # 12). After Plaintiff's discharge, the BSA "decommissioned" him as a Scouting Professional, which effectively ended his career as a Scout Executive and Scouting Professional. (2AMJ # 17).

Said breach of Plaintiff's contract by the BSA and the Peninsula Council resulted in the wrongful decertification of the Plaintiff as a scouting executive and destroyed Plaintiff's 26-year career as a BSA professional. (2AMJ # 31).

It is clear that the Plaintiff's damages directly and ordinarily flow from the alleged breach. It is not unforeseeable that the Plaintiff's reputation within the BSA and the Scouting community could be damaged by his discharge from the top professional job with the Peninsula

Council. In a society as closely-knit as that of professional scouters, reputation is extremely important to upward and lateral mobility.

With the Plaintiff's career of 25-years with the Boy Scouts, it naturally flows that his job opportunities would be greatly diminished by his termination.

The loss of benefits is also a direct damage. It is part and parcel of the Plaintiff's contract.

The Defendant further seeks to strike that portion of the Plaintiff's damages for humiliation and emotional disturbance. This court has found no request for damages for humiliation in the Plaintiff's pleadings. The Defendant's position is therefore unsupported.

The court therefore overrules the Defendant's Demurrer concerning damages.